Argued January 21, decided January 28, 1913.

**STATE ex rel. v. PORT OF BAY CITY.**

(129 Pac. 496.)

**Municipal Corporations—Ports as Municipal Corporations—Organization.**

1. Under Section 6115, L. O. L., relative to the organization of municipal corporations designated as ports, and providing that where the territorial limits do not include the county as a whole the limits shall not extend beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary, or river navigable from the seas, situate within such county, land near the summit of the dividing ridge between two drainage basins, the general trend or inclination of which is toward one of them, is properly included in the corporation including that basin, even though a few trifling rivulets thereon flow in the other direction.

**Municipal Corporations—Ports as Municipal Corporations—Organization—Elections.**

2. Where the petition for the organization of a port as a municipal corporation is in proper form, the notice of election

properly given, the returns properly made, and the proclamation of the formation of the port duly and properly entered, the county court's finding that the port has been duly organized and incorporated and the entry of such finding in the journal is res judicata as to every fact necessary to constitute a valid corporation including the location of the boundaries, and persons wishing to contest the inclusion of land should appear in the county court and do so prior to such finding, and cannot do so thereafter by quo warranto.

From Tillamook: PERCY R. KELLY, Judge.

This is a proceeding in the nature of *quo warranto* by the State, on relation of George Watt, against the Port of Bay City, a pretended *quasi* municipal corporation, and others. Decree in favor of respondents, and relator appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. John H. McNary,* District Attorney, and *Mr. H. T. Botts,* with an oral argument by *Mr. Botts.*

For respondents there was a brief over the names of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. John M. Gearin.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

This is a proceeding in the nature of *quo warranto,* brought to test the validity of the organization of a port corporation, created under the provisions of Chapter 3, Title XXXXI, L. O. L., and called the Port of Bay City.

1. The facts are as follows: In 1909 the citizens in the vicinity of Nehalem Bay, which is situated north of Tillamook Bay, organized a port under the provisions of the chapter cited, the south boundary of which was placed practically upon the summit of the range of mountains which separates Nehalem Bay from Tillamook Bay, and included all waters tributary to the Nehalem watershed, except a few very small spring branches near the summit of the range. In 1910 the Port of Bay City, which

includes all the watershed drawing into the north side of Tillamook Bay, was regularly organized; the south line of the Port of Nehalem being designated as the north line of the Port of Bay City. The proceedings were in every respect regular, and no objections are urged thereto, except that it is claimed that the brooks before referred to, being tributaries to larger streams flowing into Nehalem Bay, are a part of the Nehalem watershed, and that therefore the attempted organization of the Port of Bay City is void because in contravention of that subdivision of Section 6115, which reads as follows:

"Where a petition is filed for the incorporation of a port under the provisions of this act, the territorial limits of which do not include such county as a whole, the limits proposed by such petition shall not extend beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary, or river navigable from the seas, situate within such county."

It is conceded, and the evidence taken at the trial conclusively shows, that all the territory embraced within the proposed limits of the Port of Bay City naturally drains into Tillamook Bay, and is part of the watershed of that bay, except that at about the summit of the range some of these small streams overlap in such a manner that upon the same 40-acre tract are found spring branches which drain toward Nehalem Bay; and running parallel to them, but in an opposite direction, are others which drain into Tillamook Bay. Because of these conditions an exact and mathematical construction of the statute would require a line which, extended upon a map, would resemble a cross-cut saw, with teeth of irregular length and shape, rather than a boundary by legal subdivisions. Such a line, when surveyed and marked out, would prove to be an endless source of confusion, leaving property subject to port taxation in irregular tracts, whose acreage would not be easily computed. Even when every survey had been completed, it would be difficult for

one to stand upon a particular piece of land near the summit of the dividing ridge, and say, with certainty, in which watershed he stood, without a careful topographical survey from his point of view to the neighboring brooklets.

We do not believe that it was the intention of the statute to require such technical accuracy. In a general way the Nehalem watershed is north of the line established between the two ports, and the Port of Bay City watershed is south of the line. The object of the law was to prevent land owners from being taxed to contribute to the improvement of harbors when, by reason of natural conditions and the topography of the country, such owners could not be benefited by the proposed improvement. The watershed with its advantages of a down-grade to water commerce has suggested to the legislature a suitable unit upon which ports not embracing an entire county should be formed, and it is evident from the testimony that all these advantages are secured to property owners in the locality by the boundary line selected in this case. Whether a bucket of water emptied at a particular spot would flow north toward the Nehalem or south toward Tillamook Bay is not important. Whether the general trend or inclination of the land included within the proposed boundaries is toward Tillamook or Nehalem is of practical importance. As a general and practical proposition, it is evident that the lands come within the Tillamook watershed, even though a few trifling rivulets may flow in the other direction. This construction follows by analogy the construction given to the various acts of Congress granting to the states the swamp lands within their limits, wherein it has always been held that, if the greater part of a legal subdivision was not swampy in character, the smaller swamp portion did not pass by the grant. *Hogaboom* v. *Ehrhardt,* 58 Cal. 231.

2. There is another view of the contention in this case that is not unworthy of attention. It is conceded that

the petition was in proper form, the notice of election properly given, the returns properly made, and the proclamation of the formation of the port duly and properly entered. The jurisdiction of the court to declare the organization of the port depends upon the notice given of the election. *State* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292) ; *Wright* v. *McMinnville,* 59 Or. 397 (117 Pac. 298). This notice was sufficient to call the attention of all property owners within the proposed port to the fact that it was proposed to organize a port corporation and to establish the boundaries of the same. By the provisions of the statute the county court was required to convene seven days after the election, to canvass the returns, and to enter upon the journals of the court a proclamation declaring, among other things, that the port had been duly and legally incorporated as a municipal corporation. Plaintiff and all others having interests adverse to the organization of the port were; by the publication of the notice of election required by law, duly and legally apprised of the pendency of the proceedings, and either before the election or within the seven days intervening after the election could have appeared before the court and pointed out the alleged defects in the petition, and in a simple and inexpensive proceeding have made themselves parties to the record there, and settled by review or appeal to the circuit court the questions they here seek to litigate. The finding of the county court that the port had been duly and legally organized and incorporated, and the entry of this finding in the journal, was a final adjudication of every fact necessary under the law to constitute a valid corporation, including the location of its boundaries, and the matter sought to be litigated here is *res adjudicata.* There should be somewhere an end to litigation in respect to the organization of these ports, and, proper notice being conceded, parties claiming interest adverse to their organization should be required to act promptly and before the final order

of the county court is entered, instead of waiting until the preliminaries of organization have been completed and the officers of the corporation have entered upon their duties, and then interfering with the prosecution of the work by a proceeding based upon trifling irregularities.

The decree of the circuit court is affirmed.

AFFIRMED.

MR. JUSTICE BURNETT concurs in the result.