Argued December 10, 1918, affirmed February 4, rehearing denied
March 4, 1919.

# SOUTHERN OREGON CO. *v.* PORT OF BANDON.

### (178 Pac. 215.)

**Municipal Corporations—Establishment of Ports—Objections to Creation.**

1. After proceedings are completed under Sections 6114–6125,
L. O. L., relating to creation of ports, a land owner within the boundaries cannot thereafter for the first time complain that his land was
beyond the natural watershed of a drainage basin whose waters flowed
into another bay or river.

From Coos: JAMES W. HAMILTON, Judge.

Department 2.

During the year 1913, under the provisions of Chapter 3, Title XLI, L. O. L., proceedings were taken to organize the Port of Bandon in Coos County and a duly verified petition for a special election was filed with the county clerk and presented to the County Court of that county, from which it appeared that more than 8 per cent of the legal voters residing within the exterior boundaries of the proposed port had signed the petition, and based thereon the County Court called a special election, as provided by Section 6116, L. O. L. Notices were duly posted in each election precinct, as the act provides, and an election was held, after which the votes were counted and the judges and clerks of the election returned the canvass of the vote, together with the ballots cast, to the county clerk. Thereafter at the specified time, the County Court made its canvass of such vote, from which it appeared that a large majority of the votes cast were in favor of the incorporation of the port. Pursuant to Section 6117, L. O. L., the County Court of Coos County then duly made and entered an order

proclaiming and declaring that all of that portion of Coos County embraced and defined within the boundaries as set out in the petition, was legally established as a municipal corporation under the corporate name of the Port of Bandon, under and pursuant to and with the powers vested in such corporation by virtue of that certain act of the legislative assembly of the State of Oregon, passed at its session held in the year 1909, and substantially as provided for in Section 6117, L. O. L.   Section 6120, L. O. L., provides:

"From and after the date of the proclamation made by the County Court provided for under Section 6117, that portion of such county embraced within the limits defined in such proclamation shall be a separate district to be known as the port whose name is specified in such proclamation, and the inhabitants thereof shall be a corporation by the name and style of the port specified in such proclamation, and as such shall have perpetual succession, and by the said names shall exercise and carry out the corporate powers and objects hereinafter conferred and declared and shall make all contracts, hold, receive and dispose of real and personal property, and do all other acts and things which may be requisite, necessary or convenient in carrying out the objects of said corporation or exercising the powers conferred upon it as in this act set out and expressed, and sue and be sued, plead and be impleaded in all actions, suits or proceedings brought by or against it."

Section 6121 defines and specifies the powers of such a port after it is organized and, among other things, provides that such a port shall have power "to assess, levy and collect taxes upon all property, real and personal, situated within its boundaries, and which is by law taxable for state and county purposes, and each year not to exceed 1 per cent, the proceeds of which shall be by it applied in carrying out the objects and

purposes hereinbefore provided''; and shall also have power ''to assess, levy and collect a special tax upon all such property, real and personal, in an amount sufficient to pay the yearly interest on bonds theretofore issued by such corporation and then outstanding,'' the same to be levied and collected in like manner and with like effect as in the case of county and state taxes.

After the proclamation of the County Court, the port was organized by the election of a board of commissioners, as provided for in Section 6122, L. O. L., and pursuant to the terms and provisions of the act, annually levied certain taxes which were certified to the county clerk and for which warrants were issued and placed in the hands of the defendant sheriff for collection. The plaintiff as the owner of certain lands within the boundaries of the port as established by the County Court, commenced this suit for the purpose of enjoining the collection of the tax so levied by the port on its lands, claiming that the tax on such lands was illegal and void; that the said lands were not within the jurisdiction of the port and were not subject to any such tax; that they were outside the boundaries of the Port of Bandon, were not tributary to such port, and that the tax was a cloud upon the title to said lands.

A general demurrer to the complaint was overruled. An answer was then filed, admitting the incorporation of the port but denying all other material allegations, and as a further and separate defense alleging that the lands in question are located within the Coquille River Drainage Basin and within the boundaries of the Port of Bandon; that such port was duly organized under Chapter 3, Title XLI, L. O. L.; that no objection was ever made to the County Court by the

plaintiff, to the inclusion of said lands within the boundaries of said port; that all of the acts creating said port were duly and legally performed; that after the creation thereof, a 3-mill tax was duly levied by the port upon the lands included within its boundaries; that no objection was ever made thereto by anyone; that "the matters sought to be litigated herein relative to the boundaries of the Port of Bandon were adjudicated by virtue of the said judgment or proclamation of the County Court duly made, entered and given *in re* the incorporation of the Port of Bandon on September 3, 1913"; that such tax was duly certified by the county clerk and the county assessor of Coos County prior to December 1, 1914, and was by the officers of said county regularly and legally extended upon the assessment-roll, and that in all particulars in establishing the port and levying the tax the terms and provisions of the act were duly observed and followed.

A reply was filed. Testimony was taken, and the Circuit Court rendered a decree, dismissing the suit, from which the plaintiff appeals.

The plaintiff's cause of suit is thus stated in the record:

(By counsel for defendants.)

"Q. Your stipulation, as I understand, is to the effect that our taxes are legal and valid, except that you contend that this property is not properly within the port."

(By counsel for plaintiff.)

"A. That is the sole ground of attack, and the sole question; that is the only question we have in issue, that this property lies outside of the proper boundaries."

As to the boundaries, Section 2 of the act of 1909 (Laws 1909, Chapter 39, page 78) provides:

"Where a petition is filed for the incorporation of a port under the provisions of this act, the territorial limits of which do not include such county as a whole, the limits proposed by such petition shall not extend beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary or river navigable from the sea situate within such county."

AFFIRMED.

For appellant there was a brief over the names of *Mr. John D. Goss, Mr. John C. Kendall* and *Mr. Herbert S. Murphy,* with an oral argument by *Mr. Goss.*

For respondents there was a brief and an oral argument by *Mr. George P. Topping.*

JOHNS, J.—1. The purpose and intent of the act of 1909 was to promote the growth and development of inland harbors in the state, to provide funds for their maintenance and to facilitate transportation to and from the sea. With that end in view and in compliance with the act, the Port of Bandon was created and its boundaries defined by a proclamation of the County Court of Coos County on September 3, 1913. The Port of Coos Bay is also a municipal corporation, joining the Port of Bandon on the north, and was organized under the same law some time previous to the establishment of the Port of Bandon. Plaintiff's lands, which are valuable chiefly for timber, were not included within the boundaries of the Port of Coos Bay, although it is now contended that they are within the Coos Bay watershed and for such reason should not be included within the boundaries of the Port of Bandon. It is not claimed that any actual survey was

ever made, to determine whether or not plaintiff's lands were tributary to the watershed of the Port of Bandon, before the County Court made its order establishing that port. But it appears from the evidence that Coos Bay is indeed the true watershed of plaintiff's lands. It is also true that all parties acted in good faith in naming plaintiff's lands as within the boundaries of the Port of Bandon, and there is no suggestion or allegation of fraud in that particular.

An actual survey which required quite a little time and expense was necessary to ascertain the true watershed of plaintiff's lands, and, owing to the fact that they are on or near the divide between the watershed of the Port of Bandon and that of the Port of Coos Bay and were not included within the boundaries of the latter port, the petitioners of the Port of Bandon had a right to assume that they were tributary to that port.

Under the terms of the act, the exterior boundaries of the port must be specifically described in the petition and if the petition contains the required 8 per cent of legal voters' names, the County Court is justified in calling the election and in ratifying the result thereof by proclamation, declaring the boundaries of the district to be as specified in the petition. Section 6 of the act declares that the portion of the county embraced within such boundaries shall then become a municipal corporation, and Section 7 defines the powers and duties of such corporation, including the levying and collecting of taxes by it for the purpose of developing and maintaining the harbor. The plaintiff is seeking to enjoin the Port of Bandon from collecting a tax which the record shows was duly levied under the authority conferred upon the port by the act under which it was incorporated.

A witness for the plaintiff testified with reference to its property:

"It is all in some port now because the Port of Coquille [Port of Bandon] took all the land that was left there. * *

"Q. Didn't you investigate and find at that time that your land was included in the properties of the port?

"A. No.

"Q. Why didn't you?

"A. I didn't know anything about it. I didn't know where the boundaries was until I found out my land was taxed there, and I didn't pay any attention to the Port of Bandon boundaries, or the Port of Coos Bay boundaries, it wasn't any of my business."

Donald Charleston, who was the engineer in charge of both ports, and who was called as a witness for the plaintiff, testified as follows:

"Q. Would it be possible for a person, except one familiar with the lines and lines of the quarters, making a special investigation for that purpose, to state just for certain whether these lands are in the one watershed or the other?

"A. I don't think it would be.

"Q. It would be necessary to get down and make a careful investigation to ascertain that, perhaps?

"A. You would have to satisfy yourself, you would have to know how to run the lines, and know that you were on certain corners, at certain corners, on certain lines."

This testimony explains the true situation.

The validity of the act of 1909 and the proceedings thereunder were sustained by this court in the case of *State on Inf.* v. *Johnson,* 76 Or. 85 (144 Pac. 1148, 147 Pac. 926). In the case of *State ex rel.* v. *Port of Bay City,* 64 Or. 139, 143 (129 Pac. 496, 497), this court said:

"This notice was sufficient to call the attention of all property owners within the proposed port to the fact that it was proposed to organize a port corporation and to establish the boundaries of the same. By the provisions of the statute the County Court was required to convene seven days after the election, to canvass the returns, and to enter upon the journals of the court a proclamation declaring, among other things, that the port had been duly and legally incorporated as a municipal corporation. Plaintiff and all others having interests adverse to the organization of the port were, by the publication of the notice of election required by law, duly and legally apprised of the pendency of the proceedings, and either before the election or within the seven days intervening after the election could have appeared before the court and pointed out the alleged defects in the petition, and in a simple and inexpensive proceeding have made themselves parties to the record there, and settled by review or appeal to the Circuit Court the questions they here seek to litigate. The finding of the County Court that the port had been duly and legally organized and incorporated, and the entry of this finding in the journal, was a final adjudication of every fact necessary under the law to constitute a valid corporation, including the location of its boundaries, and the matter sought to be litigated here is *res adjudicata.*"

When the proceedings are completed as the act provides, the port is not only created, but its boundaries are specifically defined and the proceedings defining the boundaries become and are as valid and binding as the creation of the port itself. Pending the final establishment of the port, any interested person may appear before the County Court and make objections to the creation of such port or to the including of his lands within its boundaries and can then, upon a proper showing or petition, raise the question sought to be presented on this appeal. If proper relief is

denied, the complainant is then in a position either to review or appeal the action of the County Court in creating the port and defining its boundaries. For such reason, we think that during such time the plaintiff had a complete and adequate remedy at law. That is the force and effect of the decision of this court in *State ex rel.* v. *Port of Bay City,* 64 Or. 139, 142 (129 Pac. 496, 497).

While it is true that there is some language used in the case of *State on Inf.* v. *Johnson,* 76 Or. 85 (144 Pac. 1148, 147 Pac. 926), which would indicate that, "if the owners of the property so included should refuse to pay taxes to the Port of Bandon, the courts might afford them a relief by declaring such property to be outside the limits of the port," such language was *obiter dicta* and unnecessary to the opinion. To the extent that it is in conflict with the case of *State ex rel.* v. *Port of Bay City,* it is overruled. The decree of the Circuit Court is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and BEAN and HARRIS, JJ., concur.