Argued June 28, affirmed July 31, rehearing denied October 2, 1923.

## SMITH ET AL. *v.* HURLBURT ET AL.

(217 Pac. 1093.)

**Municipal Corporations—Description Sufficient for Deed is Sufficient to Describe Boundaries of Municipal Corporation.**

1. A description sufficient for a deed is sufficient to describe the boundaries of a municipal corporation.

**Waters and Watercourses—Description of Proposed Water District in Notice of Election for Organization of District Held not Insufficient, Though It Did not Refer to Townships and Ranges.**

2. Notwithstanding the description of a proposed water district in the notice of the election on question of organization (Laws 1917, p. 720, being Sections 7230–7246, Or. L.), did not give the townships and ranges of named sections, such description was sufficient where reference to other well known points plainly identified the townships and ranges.

**Waters and Watercourses—Posting of Sufficient Notice for Organization of Water District Held Legal Notice to Property Owners of Organization of District.**

3. Where sufficient notice of an election for the organization of a water district organized under Laws of 1917, page 720 (Sections

7230–7246, Or. L.), was posted in conformity to the statute, the
land owners in that district had legal notice of the organization
of the water district.

**Constitutional Law—Waters and Watercourses—Statute Providing
for Organization of Water District Held to Afford Sufficient
Notice to Property Owners and Opportunity to be Heard.**

4.  Laws of 1917, page 720 (Sections 7230–7246, Or. L.), re-
lating to the manner of exercising the initiative powers of mu-
nicipalities organized, as permitted by Constitution, Article XI,
Section 2, under the act as water districts, and which, after such
water district is organized, serves as a municipal charter, as
authorized by Article IV, Section 1a, is not unconstitutional in
not providing sufficient notice to property owners and an op-
portunity to be heard relative to the question of whether, in reason,
property shall be included in the district within Section 7246,
Or. L.

**Waters and Watercourses—Declaration by County Court of In-
corporation of Water District as a Municipal Corporation Held
Judicial Determination Reviewable by Circuit Court, if Errone-
ous.**

5.  The declaration by the County Court under Section 7235, Or.
L., that a water district has been duly and legally incorporated
as a municipal corporation is a judicial determination, reviewable
by the Circuit Court, if erroneous.

**Courts—Duty of County Court to Declare Water District Unin-
corporated upon Proper Showing That Statute was not Fol-
lowed and Property was Erroneously Included.**

6.  If the County Court, in proceeding to canvass a vote on
the question of organizing a water district (Section 7235, Or.
L.), found, upon a showing made by the property owners, that
the district was not incorporated in accordance with Laws of
1917, page 720 (Sections 7230–7246, Or. L.), or that any ter-
ritory which could not in reason, within Section 7246, Or. L.,
be supplied by the proposed water system had been included in
a district it would have been the duty of that court to have
declared that the district was not incorporated.

**Constitutional Law—Eminent Domain—Property is not Taken With-
out Due Process or Without Compensation, if Owner is Given
Opportunity to be Heard upon Question Whether His Property
Shall be Taxable—"Taking of Property Without Due Process of
Law"—"Taking of Property Without Compensation."**

7.  If provision is made for notice to each property owner, and
an opportunity given to him to be heard at some stage of the
proceedings upon the question of whether his property shall be
subject to some exaction, and, if so, how much, there is no taking
of property without due process of law within Constitution, Article
I, Section 10, nor is there any infringement of Section 18 as to
compensation for property taken.

Constitutional Law—Waters and Watercourses—Property Owners in Water District Held to have had Opportunity to be Heard as to Apportionment of Tax Levied.

8. Where a water district was incorporated and organized under and by virtue of Constitution, Article XI, Section 2, and Laws of 1917, page 720 (Sections 7230–7246, Or. L.), and possessed to a limited extent the same powers as other municipalities (Const., Art. IV, § 1a), such as the authority to levy general taxes, affording taxpayers of the district an opportunity to have their assessments equalized, property owners within such district had an opportunity to be heard as to the apportionment of the tax levied.

Waters and Watercourses—Posting of Notice for Special Election in Public and Conspicuous Place for Twenty-six Days Held Compliance With Notice of Election Within Statute.

9. Where notice of the special election as required by Section 7232, Or. L., on the question as to the organization of a proposed water district under Laws of 1917, page 720 (Sections 7230–7246, Or. L.), was posted in a public and conspicuous place within the proposed district for a period of twenty-six days preceding the election, there was a compliance with Section 7232, Or. L., as to notice, in view of Sections 3688, 3892, 7156, 7243.

Waters and Watercourses—Property Owners Having Objection to Incorporation of Water District, Should Appear Before County Court.

10. Where under Section 7235, Or. L., and by virtue of notice of a special election as provided in Section 7232, the property owners of a water district were informed of the date when the County Court would hold session to determine the incorporation of the district, any property owner having objections to such incorporation for the reason that his land could not in reason, within Section 7246, be served by the water supply, or any legal objection, should have appeared before the County Court and made such objections there.

Waters and Watercourses—Suit to Restrain Tax Held to be an Unauthorized Collateral Attack on Water District.

11. A suit to restrain collection of a water district tax wherein it is claimed to be void because the incorporation of the district was invalid, and wherein neither the district nor any of its officers nor the state is a party, is a collateral attack on the legality of its incorporation which cannot be restrained, the action at law in the nature of *quo warranto* provided by Section 366, L. O. L., being the proper remedy.

Corporations—Legality of Corporation not Inquired into Collaterally.

12. The legality of a corporation cannot be inquired into collaterally.

Constitutional Law—Notice Given by Statute or Publication is Due Process.

13. Personal notice is not an essential of due process in taxation, notice given by statute or by publication being sufficient.

Taxation—Taxpayers Receive Benefits Only as Members of Organized Society.

14. The only benefits which taxpayers receive they receive as members of organized society.

Taxation—Levy Made in Proportion to Value of Property is a "Tax" and not "Assessment," Though Levied for Purpose of Which Assessment Could be Levied.

15. If a charge or exaction is levied on all the property within the limits of some pre-existing political unit, such as a municipality, and if the levy is made in proportion to the valuation of the property, such a charge or exaction is a tax, and not an assessment, though levied for purposes for which a local assessment might have been levied.

Waters and Watercourses—Levy of Water District Tax as to Which the Record was Defective Sustained, the Intent to Levy Being Clearly Shown.

16. Though, in the record of the levy of a water district tax, the board of commissioners states they "had made a levy" instead of "a levy is hereby made," the levy will be sustained, the intent to levy the tax being clearly shown.

Taxation—Courts will Sustain Levy Though Technically Defective, When Intent to Levy is Plain and Intent to Levy is Warranted by Law.

17. The court will sustain a levy though technically defective, whenever sufficient appears to make the intent plain, provided the intent to levy a tax is warranted by law.

Taxation—Equity will not Restrain Collection for Mere Irregularities.

18. Equity will not restrain the collection of public revenue for mere irregularities in the proceedings.

Waters and Watercourses—In Suit for Relief from Burden of Tax Imposed by Water District Held That Water District was Necessary Party.

19. Though, in a proper case, equity will sometimes grant relief where an exaction such as a tax will work substantial legal injury, yet where a suit asking the cancellation of a tax and immunity of plaintiff's property from bearing the expense of a water district is based on the theory that the water district was not legally incorporated, such water district should be made a party to the suit and notified.

## From Multnomah: ROBERT G. MORROW, Judge.

13. What notice is necessary to due process of law in tax proceedings, see note in L. R. A. 1916E, 5.

In Banc.

This is a suit for an injunction by W. D. Smith, Frances Abernethy Hahn, Caroline A. Kamm, Sarah F. Abernethy, Henry Tannler, Samuel McGregor, Henry Raz, John Raz, Melchior Raz and Ulrich Gabriel against T. M. Hurlburt as sheriff of Multnomah County, Oregon, and Multnomah County, Oregon, to enjoin the collection of a tax against the plaintiffs' properties levied by Maplewood Water District for the year 1919.

Maplewood Water District was organized under Chapter 346, General Laws of Oregon 1917, being Sections 7230 to 7246, inclusive, Or. L. It was declared by the board of county commissioners of Multnomah County to be duly and legally incorporated on October 18, 1919. The complaint avers that plaintiffs are the owners of property subject to taxation within the Maplewood Water District; that the tax levied by the district was void for the reason that the record of the district showed no levy; that the incorporation of the district was invalid for the main reasons: first the notice of election was indefinite, and second, the plaintiffs' property was wrongfully included within the boundaries of the district.

The answer sets up in detail the proceedings before the board of county commissioners of Multnomah County, Oregon, whereby Maplewood Water District was incorporated, and the proceedings of the tax levy.

A reply was filed putting in issue some of the allegations of the answer. A trial on the merits was had and a decree rendered dismissing the complaint. Plaintiffs appeal. Affirmed. Rehearing Denied.

For appellants there was a brief over the names of *Mr. George S. Shepherd, Mr. George Butler Cellars* and *Mr. H. H. Riddell,* with an oral argument by *Mr. Shepherd.*

For respondents there was a brief over the names of *Mr. Stanley Myers,* District Attorney, *Mr. Sam H. Pierce,* Deputy District Attorney, *Mr. W. A. Johnson, Mr. George C. Johnson, Messrs. Teal, Minor & Winfree* and *Messrs. Johnson & Mathews,* with oral arguments by *Mr. Pierce, Mr. W. A. Johnson* and *Mr. George C. Johnson.*

BEAN, J.—It is first contended by plaintiffs that the notice of election for the organization of the district was too indefinite to give the County Court jurisdiction to declare the water district organized.

On August 23, 1919, a petition was filed with the county clerk containing the names of 101 legal voters of the proposed district duly signed, and praying that an election be called for the purpose of organizing the territory therein described under Chapter 346, General Laws of Oregon of 1917, as a district for the purpose of providing a supply of water for domestic purposes for its inhabitants to be known as Maplewood Water District, and for the election of five commissioners. The description of the proposed district in the petition was:

"That part of Sections 7, 8, 17, 18, 19, and 20 Township 1 South of Range 1 East of W. M. Multnomah County, Oregon.

"Beginning at the Southeast corner of the West Half of said Section 17, running thence North along the East line of the West Half of Section 17 to the North line of said Section 17."

Then follows a description running from point to point, such as "Portland Park Addition," "The center line of Hylo Avenue in the tract known as Lunalillo, "Wildwood," "Queensland," "Nelson Addition," "Lyndhurst," "Center line of County Road No. 312 known as Garden Home Road," and "Center line of County Road known as Capital High-- way." The additions mentioned are on the map used by the county, and most of them appear to be well known.

The notice of election for the organization of the district read in part as follows:

"SPECIAL ELECTION NOTICE:

"Notice is hereby given that on the 11th day of October, 1919, at the Maplewood School House in the County of Multnomah, State of Oregon, a special election will be held to determine whether that portion of Multnomah County, State of Oregon, described as follows:

"Beginning at the southeast corner of the west half of said Section 17 and running thence north along the east line of said west half of Section 17 to the north line of said Section 17";

Then follows the remainder of the description as contained in the petition, except that the township and range given in the first part of the petition were omitted. In other respects the notice is not criticised.

1, 2. There are thirteen or fourteen sections in Multnomah County numbered 17. For this reason the plaintiffs contend that the notice was insufficient in that it did not give the township and range. This position would be correct were it not for the fact that the description is plainly tied to the Portland Park Addition and other well-known additions and well-known county roads, so that by tracing the line described in the notice from the corner mentioned in

section 17 "to the east line of tract known as Portland Park Addition," the township and range are identified, as well as by other additions named, and by county roads, and shown to be township 1 south, range 1 east of W. M. The notice is sufficient to inform anyone reading it of what territory is to be included in the water district. A description sufficient for a deed is sufficient to describe the boundaries of a municipal corporation: *State ex rel.* v. *Bay City,* 65 Or. 124 (131 Pac. 1038); *Parker* v. *Clatsop County,* 69 Or. 62 (138 Pac. 239).

3. Some of the plaintiffs did not see the notice and did not know in regard to the organization of the water district until some time after the incorporation, but a sufficient notice was posted in conformity to the statute, and all of the plaintiffs had legal notice of the organization of the water district.

4. It is also contended by the plaintiffs that the act under which the water district was organized is unconstitutional for the reason that the act does not provide for sufficient notice to the owners of property within the proposed district and opportunity to be heard upon the question of whether in reason their property shall be included in the district. Section 7246, Or. L., provides:

"The boundary lines of any municipal corporation created under the provisions of this act, shall include only such territory as may in reason be served by the water supply or system thereof."

As to this feature of the question plaintiffs allege:

"That the boundary lines of said pretended Maplewood Water District as described in said order of the County Commissioners of October 18, 1919, proclaiming said water district, included the property of the plaintiffs heretofore described in Paragraph III of this complaint, and upon which a tax is sought

to be collected for the benefit of said pretended Maplewood Water District, and the said property of the plaintiffs cannot in reason be served by any water supply or system in said pretended Maplewood Water District and plaintiffs are now supplied by water from the Southwest Side Water Company's pipe line and with the Bull Run pipe lines of the City of Portland, a municipal corporation, and plaintiff's present water supply is adequate and sufficient and the plaintiffs have paid the expense of all necessary iron or steel pipe lines and the water supply furnished to them is in fact the same water supply which said pretended Maplewood Water District proposes or can furnish to the inhabitants within the boundaries of said pretended district, and the valuations made by the Assessor of Multnomah County, Oregon, was and is based, among other things, on the fact that these plaintiffs are being furnished with water from the pure supply furnished to the inhabitants of the City of Portland, and the assessment against these plaintiffs has consequently been increased by reason of their present water supply, and plaintiffs have already contracted for and paid the expense of being furnished with water for domestic purposes.''

It appears from the record that prior to the passage of the act of 1917, a corporation was formed known as the Southwest Side Water Company, and water was obtained from the Bull Run water system of the City of Portland, and between Maplewood Water District and the city limits of the City of Portland near which the supply of water is taken for Maplewood Water District iron or steel pipes were laid to supply water for the land in the vicinity of the east line of Maplewood Water District for domestic purposes at an expense of about $20 per acre to the stockholders of the company. This system is now operated by a co-operative company known as the Southwest Side Water Company. The supply is taken from the

same source as the water for the Maplewood Water District. Some of the property owners whose property was supplied by water from the Southwest Side water system were included in Maplewood Water District. Most of the property of such water users was left out of the district. It is shown by the testimony that the following plaintiffs have a water right and a water supply from the Southwest Side Water Company's system, namely: W. D. Smith; Frances Abernethy Hahn; Henry Raz, John Raz and Melchior Raz; Henry Tannler and Samuel McGregor.

The law under which Maplewood Water District was incorporated is entitled:

"An act to authorize communities to incorporate as municipal corporations for the purpose of supplying their inhabitants with water for domestic purposes; to issue, sell and dispose of bonds and other securities; to levy taxes and have the right of eminent domain for such purposes."

Article XI, Section 2, of the Constitution of Oregon ordains that corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon.

Article IV, Section 1-a of that Organic Act provides that the initiative and referendum powers reserved to the people by the Constitution are further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercis-

ing said power shall be prescribed by general laws, except that cities and towns. may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation.

Chapter 346, Laws of 1917, provides the manner of exercising the initiative powers of municipalities organized under the act as water districts. In other words, Chapter 346 is an enabling act. After such water district is organized it serves as a municipal charter and prescribes the powers of the corporation.

Section 7241, Or. L., provides that such corporation shall have the power to assess, levy and collect taxes upon all property, real, personal and mixed, situated within its boundaries, and which is by law taxable for state and county purposes, each year not to exceed 1 per cent; and also to assess, levy and collect a special tax in an amount sufficient to pay the yearly interest on bonds issued by the corporation. Such taxes are to be returned to the county officer whose duty it is to extend the tax-roll, by the time required by law for city taxes to be levied and returned.

The act, Section 7235, Or. L., directs the judges and clerks to return "the canvass of the vote" to the county clerk. At the special session of the County Court required to be held on the seventh day after the election that court is required to "proceed to canvass such vote," and make the proclamation mentioned. The County Court is established by virtue of the Constitution and is invested with the jurisdiction conferred by that document, and such as may be prescribed by law. If the plaintiffs, or anyone interested in Maplewood Water District, had appeared before the County Court at any time within the seven days after the election and made their objections and stated that for any reason there was no legal election, or lawful votes to be canvassed, as they do in the

present case, the statute, while it is somewhat general in its terms, clearly contemplates that the County Court would have heard the matter and in a judicial examination considered all questions as to the regularity and validity of the proceedings of the incorporation involving their property. Otherwise the canvass made by the returning board would suffice.

5. The declaration that the district "has been duly and legally incorporated as a municipal corporation" was a judicial determination, and if erroneous could have been reviewed by the Circuit Court: *State ex rel.* v. *Port of Bay City,* 64 Or. 139 (129 Pac. 496); *Southern Oregon Co.* v. *Port of Bandon,* 91 Or. 308 (178 Pac. 215); *Lent* v. *Tillson,* 140 U. S. 316, 329 (35 L. Ed. 419, 11 Sup. Ct. Rep. 825); *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, 69, see, also, Rose's U. S. Notes).

6. Had the County Court found upon such showing that the district was not incorporated in accordance with the statute, or that any territory which could not in reason be supplied by the proposed water system had been included in the district, it would have been the province of the jury of that court to have declared that the district was not incorporated.

7. It is the prevailing rule that if provision is made for notice to each property owner, and an opportunity given for him to be heard, at some stage of the proceedings, upon the question of whether his property shall be subject to some exaction, and if so how much, there is no taking of property without due process of law, or any infringement of Article I, Sections 10 and 18, Constitution of Oregon: *King* v. *Portland,* 38 Or. 402, 417 (63 Pac. 2, 55 L. R. A. 812); *Wilson* v. *City of Salem,* 24 Or. 504 (34 Pac. 9, 691); *In re Harper Irr. Dist., ante,* p. 598 (216 Pac. 1020), *Mc-*

*Millen* v. *Anderson,* 95 U. S. 37 (24 L. Ed. 335);
*Davidson* v. *New Orleans,* 96 U. S. 97 (24 L. Ed.
616); *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112
(41 L. Ed. 369, 17 Sup. Ct. Rep. 56); *Paulsen* v. *Portland,* 149 U. S. 30 (37 L. Ed. 637, 13 Sup. Ct. Rep.
750, see, also, Rose's U. S. Notes).

8. Maplewood Water District was incorporated and
organized under and by virtue of the Constitution of
Oregon, and Chapter 346 of the Laws of 1917, and
has to a limited extent the same powers as other
municipalities, such as the City of Portland near
which it is located. It is authorized to levy a general
tax. The tax is levied upon the property as assessed
by the county assessor, and there is a regular board
of equalization which affords the taxpayers of the
district an opportunity to have their assessments
equalized, so that the plaintiff and all persons similarly situated had an opportunity to be heard as to
the apportionment of the tax levied.

9. It is claimed on behalf of plaintiffs that the
notice of election was posted for less than thirty days,
the time required by law for posting notices; that
the notice was posted for only twenty-six days. Section 7232, Or. L., calling for special election for submitting the proposition, provides in part:

"The polls shall be kept open between the hours
provided for in case of general elections, and notice
of the time of such special elections shall be posted
in like manner as provided for in cases of general
elections."

The general election law, Section 3892, Or. L., provides:

"It shall be the duty of the county clerk thirty days
before any general election, and at least ten days
before any special election, to prepare printed notices

of the election and mail two of said notices to each judge and each clerk of election in each precinct, and it shall be the duty of the several judges and clerks to immediately post said notices in public places in the respective precincts.''

It will be noticed that the ''manner'' of posting is the same in general and special elections. The time of mailing is thirty days in one case and ten days in the other. There is nothing in the law that requires the county clerk to prepare and mail the notices as in the cases of general elections. The general election law requires that he shall ''at least ten days before any special election'' prepare and mail notices, and it is not apparent that the legislature intended to make this special election any different from any other special election coming under the election laws. The section requires the County Court to call the special election to be held within such proposed district ''not less than thirty days nor more than fifty days'' after the petition therefor is filed. If the election is called within the shortest time authorized after filing the petition, there would not be time for posting the notices for full thirty days.

In the present case the county clerk prepared and caused to be printed the notices of election, and mailed two to each election officer. These twelve notices were posted in public and conspicuous places within the district for a period of twenty-six days preceding the special election. It would practically be impossible for the clerk to prepare, print, mail and have posted the notices thirty days before the date set in case an election were called to be held thirty days after the filing of the petition. The legislature has considered ten days' notice sufficient for other elections held within the district, and for other special elections held under the general election law.

Section 7243, Or. L., provides that the power and authority given to corporations organized under the act are vested in and shall be exercised by a board of commissioners; and among other things directs that in November the commissioners shall select three judges and three clerks of election for a general election in the corporation on the first Monday in December, and shall also select the polling places for the regular election and shall cause to be given notice of the place of holding the election and also the names of the judges and clerks, which notice shall be posted in three public places in the corporation at least ten days prior to the day of election. Exactly the same language as to "manner" of posting is used in the statute for the creation of ports, Section 7156, Or. L., and in the law for the incorporation of cities and towns, Section 3688, Or. L. It has heretofore been considered sufficient for the special election for the organization of a port that the notices were duly posted ten days prior to the election: *State ex rel.* v. *Port of Tillamook,* 62 Or. 332, 338–340 (124 Pac. 637, Ann. Cas. 1914C, 483).

There is no essential difference between the method of incorporating a water district and the method of incorporating a port, or a city or town, or a union high school district. This method of general incorporation by a vote of the people affected, which is the exercise of home rule, is firmly fixed in the law and policy of this state.

It is admitted that there were less than 275 legal voters in Maplewood Water District. The vote stood 201 for organization of the district and 4 against. There was no possibility of a change in the result. In *State* v. *Johnson,* 76 Or. 85 (144 Pac. 1148, 147 Pac. 926), it was held that an election should not be dis-

turbed on account of a defect in the notices, without a showing that the result might have been changed. To the same effect are the opinions: *Wiley* v. *Resoner,* 69 Or. 103 (138 Pac. 250); *State* v. *Hall,* 73 Or. 231 (144 Pac. 475); *Links* v. *Anderson,* 86 Or. 508 (168 Pac. 605, 1182); and *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439).

The election in question was a "special election" and notice was posted in accordance with the general election law for the calling of a "special election." We hold there was a compliance with the statute as to notice.

10. The notice informed the residents of the proposed Maplewood Water District of the time and place of holding the special election for the purpose of organizing the water district. Under the provisions of the law therefor, Section 7235, Or. L., after the return and canvass of the votes "on the seventh day after the election a County Court shall hold a special session and proceed to canvass such vote." If it appears that a majority of the votes cast at such special election are in favor of such incorporation, the County Court is required to make a proclamation, reciting the holding of election under the act, and stating the vote, and to proclaim and declare that all that part of the county, in this case Multnomah, State of Oregon, hereinbefore described, has been duly and legally incorporated under the name proposed.

Under this statute and by virtue of the notice of election the property owners in Maplewood Water District were informed of the date when the County Court would hear the matter and find whether or not the district was "duly and legally incorporated." Any of such property owners having objections to such incorporation for the reason that their land could

108 Or.—45

not in reason be served by the water supply or system thereof, or any legal objection, should have appeared before the County Court and made such objection.

In *State ex rel.* v. *Port of Bay City,* 64 Or. 139 (129 Pac. 496), this court announced the following rule:

"The finding of the County Court that the port had been duly and legally organized and incorporated and the entry of this finding in the journal, was a final adjudication of every fact necessary under the law to constitute a valid corporation, including the location of its boundaries, and the matter sought to be litigated here is *res adjudicata.*"

This rule was followed in *Southern Oregon Co.* v. *Port of Bandon,* 91 Or. 308 (178 Pac. 215). The two latter cases were under a law practically like the one under consideration in this regard.

The election for the incorporation of the district was ordered on September 8, 1919, and held on October 11, 1919. The board of county commissioners convened in special session as required by the law on October 18, 1919, and proclaimed the due and legal incorporation of the district. The regular annual election of the district was held on December 1, 1919. A special election was called and held by the district on January 10, 1920, at which an issue of $50,000 in bonds was authorized. A tax was levied on November 15, 1919, and this levy was published in the "Portland Telegram" of December 11, and December 20, 1919. These bonds were issued and sold and the contracts were let aggregating $49,000, and the building of a public water system for domestic supply was entered upon. This suit was filed April 7, 1920, after the above proceedings had passed through their regular course. Neither the Maplewood Water District

nor any of the officers thereof is a party to this litigation. The State of Oregon is not a party plaintiff.

11, 12. It is contended upon the part of defendants that this is a collateral attack upon the legality of the incorporation of the Maplewood Water District, and that the plaintiffs cannot question its authority so long as the State of Oregon permits the water district to act in its corporate capacity.

1 Dillon on Municipal Corporations (5 ed.), Section 66, states the rule thus:

"Corporate Existence not Open to Collateral Attack.—Where a municipal corporation is acting under color of law, and its existence is not questioned by the State, it cannot be collaterally drawn in question by private parties; * * *"

In *Bennett* v. *Sengstacken,* 58 Or. 333 (113 Pac. 863), plaintiffs attempted to restrain the collection of taxes and to declare the incorporation of the port invalid, and the court said:

"To reach the result desired by the plaintiffs the court is asked to override the exercise of a political power by a co-ordinate branch of the government in appointing these officers, and, having done so, to go still further and overturn in this collateral proceeding the order and proclamation of the County Court of Coos County, a tribunal specially authorized to declare the result of an election which it confessedly had the power and authority to order, and, finally, to determine that the defendants had no title to the positions of commissioners of the port. We do not conceive that the equitable power of the court extends so far. If the plaintiffs would determine the title to the positions held by the defendants, recourse can be had to the remedy provided by Section 366, L. O. L."

Section 366 provides for an action at law in the nature of *quo warranto.*

In *Splonskofsky* v. *Minto,* 62 Or. 560 (126 Pac. 15), where plaintiffs attempted to restrain the collection of a tax on the ground of defective levy and defective incorporation, this court refused to take jurisdiction, either to restrain the tax or to declare the incorporation invalid, and, after quoting Section 366, L. O. L., said: "We cannot justify plaintiffs in ignoring this remedy at law and seeking the aid of government by injunction."

In *Tyree* v. *Crystal Dist. Improvement Co.,* 64 Or. 251 (126 Pac. 605), we read:

"As long as the State permits a *de facto* corporation to carry on business as such an institution, its validity cannot be assailed in a collateral proceeding."

It is a settled law in this state that the legality of a corporation cannot be inquired into collaterally: *Alder Slope Ditch Co.* v. *Moonshine Ditch Co.,* 90 Or. 385 (176 Pac. 593).

It was said in *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, at page 174 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, 69, see, also, Rose's U. S. Notes), in regard to the organization of an irrigation district:

"There is nothing in the essential nature of such a corporation, so far as its creation only is concerned, which required notice to or hearing of the parties included therein, before it can be formed. It is created for a public purpose, and it rests in the discretion of the legislature when to create it, and with what powers to endow it."

There are sometimes grave questions as to whether an exaction is strictly a tax or a local assessment. This case seems to be presented on behalf of plaintiffs upon the theory that the tax in question is a special assessment.

13. Where a law like the statute under consideration imposes a tax or assessment upon property according to its value, notice of every step in the tax proceedings is not necessary; the owner is not deprived of property without due process of law if he has an opportunity to question the validity or the amount of such tax or assessment, either before that amount is finally determined or in subsequent proceedings for its collection. Personal notice is not an essential of due process in taxation; for that notice is sufficient which is given by statute, or by publication: 1 Cooley on Taxation (3 ed.), p. 60.

14. It is said that an assessment is "distinguishable from our general idea of a tax but owes its origin to the same source or power." The most important distinction between a tax and a local assessment is that the tax is levied for the purpose of raising revenue for paying the expenses of the government. The only benefits which the taxpayers receive, they receive as members of organized society: 1 Page and Jones on Taxation, § 35.

15. As a general rule, if the charge or exaction is levied upon all the property within the limits of some pre-existing political unit, such as a municipality, and if the levy is made in proportion to the valuation of the property upon which it is levied, such a charge or exaction is held to be a tax and not an assessment even if it is levied for purposes for which a local assessment might have been levied. Such method of selecting the property which is to bear the burden, in connection with the method of apportioning the burden among the property thus selected, shows that the charge was not based upon any theory of special benefits to the property taxed: 1 Page and Jones on Taxation, § 36.

In the case of *Town of Macon* v. *Patty,* 57 Miss. 378, 386 (34 Am. Rep. 451), cited in the note to the former section of 1 Page and Jones on Taxation, it is said:

"A local assessment can only be levied on land. It cannot, as a tax can, be made a personal liability of the taxpayer; it is an assessment on the thing supposed to be benefited. A tax is levied on the whole state, or a known political subdivision, as a county or town."

In *King* v. *Portland,* 38 Or. 402, 413 (63 Pac. 2, 4), Mr. Justice Wolverton in discussing special assessment quotes from the opinion in *Stuart* v. *Palmer,* 74 N. Y. 183 (30 Am. Rep. 289), thus:

"But in all cases there must be a proportionment of the burdens, either among all the property owners of the state, or of the local division of the state, or the property owners specially benefited by the improvements. In either case, if one is required to pay more than his share, he receives no corresponding benefit for the excess and that may properly be styled extortion or confiscation. A tax or assessment upon the property, arbitrarily imposed, without reference to some system of just apportionment, could not be upheld."

The property owners in Maplewood Water District had the same opportunity to have the taxes assessed against their property fairly and equally apportioned that the property owners in the City of Portland or any other municipality in the state had for such adjustment.

16, 17. Plaintiffs also claim that no legal levy of the tax in question was ever made. The record of the board of commissioners of Maplewood Water District shows the following entry in the minutes of November 15, 1919, to wit:

"Upon motion duly made, put and unanimously carried, the Secretary was instructed to notify the proper authorities that the Board of Commissioners had made a levy of $4,500 to be raised on the tax and assessment-rolls for the year 1919, in the Maplewood Water District, for the general purposes of the District."

The board of commissioners on that date notified the county authorities that the board "has this day levied a tax of Four Thousand Five Hundred Dollars ($4,500) for the purposes of the District, which tax is to be assessed and collected on the assessment-rolls for the year 1919." Full and complete notice was also given of the levy of the tax, to the county assessor. The language of the record of the commissioners in regard to the levy of the tax, which is criticised by plaintiffs for the reason that they state, they "had made a levy," instead of "a levy is hereby made," is merely a matter of phraseology. The intent to levy the tax is clearly shown by the record. No technical defects should invalidate the levy. The courts will sustain such a levy whenever sufficient appears to make the intent plain, provided the intent to levy a tax is warranted by law: *Beirl* v. *Columbia County*, 73 Or. 107 (144 Pac. 457); *Du Bois Lumber Co.* v. *Clatsop Co.*, 74 Or. 409 (145 Pac. 653).

In *Vaughn* v. *School District*, 27 Or. 57 (39 Pac. 393), this court held:

"It is the duty of the courts in construing them [records] to disregard irregularities, and uphold the tax, so long as the substance of a good vote sufficiently appears. Cooley on Taxation, 337. * * The intent to levy the ten-mill tax, and have it collected, is apparent from the record, and where such intent is manifest it is equivalent to a present levy."

18. It is a well-established rule in this state that equity will not restrain the collection of public revenue for mere irregularities in the proceedings: *Yamhill County* v. *Foster,* 53 Or. 124 (99 Pac. 286); *Splonskofsky* v. *Minto,* 62 Or. 560 (126 Pac. 15); *Leach* v. *Port of Tillamook,* 62 Or. 345 (124 Pac. 642).

19. It is claimed by plaintiffs in effect that equity should relieve them from the burden of the expense of the water system for the reason that some of the plaintiffs had an adequate water system before the organization of Maplewood Water District. In a proper case equity will sometimes grant relief, where such an exaction will work a substantial legal injury: See *In re Harper Irr. Dist., supra; State ex rel.* v. *Port of Bay City,* 64 Or. 139 (129 Pac. 496). It would seem, however, that the position taken by plaintiffs in this case would suggest that, as the district is legally incorporated, before a tax levied by it should be canceled or any property owner in the district should have his property rendered immune from bearing the expenses of the district the municipality should be made a party to the suit and be notified. This suit is upon the theory that there is no such incorporation as Maplewood Water District.

We find from the record that Maplewood Water District was regularly incorporated under the statute as a municipal corporation, and the taxes complained of legally levied.

It follows that the decree of the lower court should be affirmed. It is so ordered.

Affirmed. Rehearing Denied.

Mr. Justice McCourt did not sit in this case.