Argued June 16; affirmed July 7, 1942

# STATE EX REL. *v.* PORT OF CASCADE LOCKS ET AL.

(127 P. (2d) 351)

198

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Teunis J. Wyers*, District Attorney, of Hood River (Ercel L. King, former District Attorney, of Hood River, on the brief), for appellant.

*R. F. Hollister*, of Portland, for respondents.

BAILEY, J. This is an action in the nature of *quo warranto*, brought in the name of the State of Oregon on the relation of a private citizen, against the port of Cascade Locks, designated as a pretended municipal corporation, and the members of the board of commissioners of such corporation. The circuit court entered judgment in favor of the defendants, and the plaintiff has appealed.

The principal question here involved is whether the territorial limits of the port as proposed by the petition for its incorporation extend "beyond the natural

watershed of any drainage basin whose waters flow into another bay, estuary or river navigable from the sea situate within" Hood River county. The trial court found that the proceedings leading up to and including the proclamation of incorporation made by the county court of Hood River county were regular and valid, and adjudged that the port was incorporated according to law and that the individual defendants constituted the duly appointed, qualified and acting board of commissioners of the port of Cascade Locks. We concur in that conclusion. It is not necessary, we believe, to point out the various proceedings had in the incorporation of the port.

The proclamation of the county court of Hood River county, declaring "that all that part of Hood River county, state of Oregon, described as hereinabove, has been duly and legally incorporated as a municipal corporation under the corporate name of the Port of Cascade Locks", was made and entered June 24, 1937. Thereafter, on or about July 1, 1937, the governor of the state of Oregon appointed five individuals who were residents and legal voters of the city of Cascade Locks, which city is within the boundaries of the port district, as port commissioners, and they duly qualified as such commissioners. The individuals named herein as defendants were thereafter appointed by the governor and duly qualified as members of the board of commissioners.

The incorporation of the port of Hood River preceded that of the port of Cascade Locks. The territorial limits of the port of Hood River include, roughly speaking, two-thirds of the eastern part of Hood River county north of the southern boundary of township 1 south, range 9 east, and township 1 south, range 10

east, Willamette meridian. Both the port of Hood River and the port of Cascade Locks are bounded on the north by Columbia river. Hood river flows into Columbia river through the territory of the port of Hood River, but that port district does not include the entire area drained by Hood river and its tributaries.

The port of Cascade Locks includes all the territory in Hood River county not embraced within the district of the port of Hood River. Seventy per cent of the territory of the port of Cascade Locks is in the drainage basin of which the waters flow into Columbia river through the district comprising the port of Hood River. All this 70 per cent, including 800 to 900 acres of land in private ownership, is located within the boundaries of Mount Hood national forest.

This court in the case of *State ex rel. Watt v. Port of Bay City*, 64 Or. 139, 143, 129 P. 496, with reference to the effect of the county court's proclamation of incorporation, said:

"The finding of the county court that the port had been duly and legally organized and incorporated, and the entry of this finding in the journal, was a final adjudication of every fact necessary under the law to constitute a valid corporation, including the location of its boundaries, and the matter sought to be litigated here is *res adjudicata*. There should be somewhere an end to litigation in respect to the organization of these ports, and, proper notice being conceded, parties claiming interest adverse to their organization should be required to act promptly and before the final order of the county court is entered, instead of waiting until the preliminaries of organization have been completed and the officers of the corporation have entered upon their duties, and then interfering with the prosecution of the work by a proceeding based upon trifling irregularities."

Most of the foregoing excerpt is quoted with approval in *Southern Oregon Co. v. Port of Bandon*, 91 Or. 308, 178 P. 215, and *State ex rel. Brown v. Bailey*, 151 Or. 496, 51 P. (2d) 671.

The respondents cite these cases and rely upon them as determinative of the questions raised in this proceeding. There was not involved, however, in the cases mentioned, except to a limited extent in *State ex rel. Watt v. Port of Bay City*, supra, the principal question, as above noted, that is here before us. All the other questions raised in the circuit court by the plaintiff herein were decided by that court, on the evidence before it, adversely to the contentions of the plaintiff; and as the evidence amply supports the court's findings, the above cited authorities may be regarded as controlling with reference to that feature of the case.

Section 105-512, O. C. L. A., reads in part as follows:

"No action or proceeding, under section 8-802 or otherwise, shall be maintained·for the purpose of avoiding, setting aside or otherwise questioning or affecting the validity of the organization of any municipal corporation designated as a port and organized under the provisions of sections 105-501 to 105-509, inclusive, and 105-526 to 105-528, inclusive, unless such action or proceeding be commenced within one year from the date of the proclamation in such matter made by the county court as provided for under section 105-504; nor for the purpose of questioning the legality of the boundaries established for such corporation in such proclamation unless similarly commenced within said year therefrom."

The statute quoted was enacted in 1917 (Laws 1917, chapter 341), more than four years after the decision was rendered in *State ex rel. Watt v. Port of Bay City*,

supra. And it apparently has never been cited or construed by this court.

■ The action at bar was instituted in February 1942, more than one year after the entry of the proclamation of the county court; and therefore, because of the prohibition of the quoted statute, it could not be maintained to set aside the incorporation of the port because of any mere irregularity in the proceedings.

Assuming, but not deciding, that it was not the intention of the legislature to make the limitation applicable to suits or actions directed against incorporation proceedings void on their face, we shall now consider whether the boundaries of the port of Cascade Locks include territory not properly within the district.

Section 105-501, O. C. L. A., provides that: "Municipal corporations designated as ports may be incorporated in counties bordering upon bays or rivers navigable from the sea or containing bays or rivers navigable from the sea in manner as in this act hereinafter provided." The next section, 105-502, O. C. L. A., prescribes the procedure to be followed in filing petitions for the incorporation of ports and sets forth the form of petition. At the end of the section is this provision:

". . . Where a petition is filed for the incorporation of a port under the provisions of this act, the territorial limits of which do not include such county as a whole, the limits proposed by such petition shall not extend beyond the natural watershed of any drainage basin whose waters flow into another bay, estuary, or river navigable from the sea situate within such county."

In *State ex rel. Watt v. Port of Bay City*, supra, it was pointed out that all the territory embraced within

the proposed limits of the port "naturally drains into Tillamook bay, . . . except that at about the summit of the range some of these small streams overlap in such a manner that upon the same 40-acre tract are found spring branches which drain toward Nehalem bay". It was said that because of the conditions existing, "an exact mathematical construction of the statute would require a line which, extended upon a map, would resemble a cross-cut saw, with teeth of irregular length and shape, rather than a boundary by legal subdivisions". The court stated that it did not "believe that it was the intention of the statute to require such technical accuracy", and held the proceedings for the incorporation of the port valid.

This court, in the later case of *State ex rel. Blum v. Port of Bay Ocean*, 65 Or. 506, 133 P. 85, held void the proceedings for the incorporation of the port of Bay Ocean, for the following reason:

"We are also of the opinion that the inclusion of part of the watersheds of two other bays renders the proceeding void. In State ex rel. v. Port of Bay City, 64 Or. 139 (129 Pac. 496), we held that a substantial compliance with the statute is sufficient; but the area of watershed tributary to other ports is so extensive in this instance that it passes beyond a mere technical deviation from the statute, and becomes a matter of substance."

In the case from which we have last quoted, it appears that the proposed territorial limits of the port of Bay Ocean did not include Tillamook county as a whole. They did, however, include "portions of the watershed tributary to Nestucca bay, and a portion of the watershed tributary to Netarts bay".

 In the instant case the evidence discloses, and the court takes judicial notice of the fact, that Columbia river is navigable from the sea to the two ports involved, and for a considerable further distance. The record shows that Hood river in its natural state is not a navigable stream within the meaning of the port act. That act contemplates the organization, on streams, bays or estuaries, of ports suitable for commercial shipping, which traffic Hood river in its natural state could not accommodate. Since the building of the Bonneville dam in Columbia river, water of that river has been backed into Hood river to a depth of 10 to 15 feet for a distance of 200 to 300 yards from the mouth of the latter river. In our opinion, the artificial enlarging of the mouth of Hood river does not convert that stream into one navigable within the meaning of the act. Moreover, it does not appear from the record whether the Columbia backwater entered Hood river before or after the incorporation of the port of Cascade Locks.

Hood River county does not border upon or contain any bay or estuary, and the only river navigable from the sea which it contains or upon which it borders is the Columbia. The waters from all drainage basins within Hood River county flow into Columbia river. It is therefore apparent that the territorial limits of the port of Cascade Locks do not "extend beyond the natural watershed of any drainage basin whose waters flow into another . . . river navigable from the sea situate within" Hood River county. In other words, the waters of all drainage basins within or partly within the limits of the port of Cascade Locks flow into the same navigable river, the Columbia.

■ The inclusion within the port district of Cascade Locks of lands within the drainage basin of Hood river and its tributaries does not contravene any of the provisions of the act under which the port was created. The judgment appealed from is therefore affirmed.