## JOHN A. HAMILTON ET AL. *v.* CHARLES RUDEEN ET AL.

(224 Pac. 92.)

**Waters and Watercourses—Proceedings for Organization of Water District Held not Res Judicata as to Matters Urged in Objections Before County Commissioners.**

1.   County Court's finding that water district has been duly organized and incorporated and the entry of such finding in the journal is *res judicata* as to every fact necessary to constitute a valid corporation under Sections 7230–7246, Or. L., including the location of the boundaries, and persons wishing to contest the inclusion of land should appear in the County Court and do so prior to such finding; but where land owners appeared before county commissioners and objected to the incorporation of the district and to the inclusion of their lands within the district upon the ground that the lands themselves furnished more water for domestic use than was required for that purpose, and commenced suits and obtained a temporary order restraining the county commissioners from making any proclamation, finding, or order to the effect that the district had been duly organized and incorporated, these proceedings in themselves alone are not sufficient to constitute an adjudication of the matter, and, not being *res judicata* of the matters thus alleged, the land owners are not barred or concluded of the right to have these matters determined in these suits.

**Waters and Watercourses—Requisites of Description of Water District.**

2.   Any description sufficient for a deed is sufficient to describe the boundaries of a municipal corporation, such as a water district.

**Deeds—Sufficiency of Description.**

3.   The description in a deed of land conveyed must be sufficiently definite and certain to enable the land to be identified or

---

See 12 C. J., p. 1258; 18 C. J., p. 180; 40 Cyc. 818, 819.

to furnish the means of identifying the land under the maxim, *"Id certum est quod certum reddi potest."*

**Waters and Watercourses—Description of Proposed Water Districts Held Sufficient.**

4. A description in a petition for organization of water district under Sections 7230–7246, Or. L., and in notice of election, which started at a definite, fixed and established point and followed the exterior boundaries of the proposed district, each course and distance around the entire district being stated, was sufficiently definite and certain.

**Constitutional Law—Waters and Watercourses—"Community" Which may be Incorporated as Water District in View of Due Process Clause of Constitution.**

5. The term "community," as used in Section 7230, Or. L., providing that communities may be incorporated for the purpose of supplying inhabitants with water, should be construed to embrace and include all the inhabitants of a district having a community of interest in obtaining for themselves in common a water supply for domestic use, and such a district cannot include lands abundantly supplied by springs with good water; as any other construction would clearly violate the due process clause of the federal Constitution (Article V, and Amendment 14, § 1).

From Multnomah: WALTER H. EVANS, Judge.

Department 1.

REVERSED.

For appellant there was a brief over the names of *Mr. Henry S. Westbrook, Mr. Arthur A. Murphy* and *Mr. W. W. Dugan,* with oral arguments by *Mr. Westbrook* and *Mr. Dugan.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, *Mr. Samuel H. Pierce,* Deputy District Attorney, and *Messrs. Johnson & Mathews,* with an oral argument by *Mr. George C. Johnson.*

RAND, J.—Plaintiffs appeal from a decree dismissing two suits brought by different plaintiffs to enjoin the defendants, the county commissioners of Multnomah County, from making or entering an order proclaiming the incorporation of the Rock-

wood Water District as a municipal corporation and to restrain others, who claim to have been elected as commissioners of said district, from doing any act for or in the name of said district. These suits, by stipulation of the parties, were consolidated and tried as one. Proceedings for the incorporation of the district, pursuant to Sections 7230 to 7246, Or. L., were had for the purpose of supplying the inhabitants of the territory embraced therein with water for domestic purposes. These proceedings were initiated by initiative petition in proper form filed with the county clerk of Multnomah County. This petition was signed by the requisite number of legal voters, residents of said proposed district, and petitioned the county commissioners to call a special election for submission to the legal voters of said proposed district the question of the incorporation of the territory embraced therein as a municipal corporation, for the purpose of supplying the inhabitants thereof with water for domestic purposes. Pursuant thereto the county commissioners called a special election to be held within the proposed district and notice of such election was properly given. Conformably to such notice an election, at which 534 votes were cast, was held and the returns thereof were properly made. A canvass of the votes by the county commissioners disclosed that a majority of those voting at such special election had voted in favor of the incorporation of the district, there having been cast 263 votes in favor of and 224 against the incorporation. The canvass also disclosed that the defendants, S. A. Arata, George E. Barr, Bert E. Boice, C. L. Haynes and William McKee, were the five who had received the highest number of votes for commissioners of said district.

1. Defendants contend that these suits cannot be maintained because plaintiffs' remedy, if any, must

be obtained from the county commissioners or by an appeal therefrom and that the proceedings which have been had before the county commissioners, no appeal therefrom having been taken, is *res judicata* as to the matters complained of. Where the petition for the organization of the district was in proper form, the notice of election properly given, the returns properly made and the proclamation of the formation of the district duly and properly entered, the County Court's finding that the district has been duly organized and incorporated and the entry of such finding in the journal is *res judicata* as to every fact necessary to constitute a valid corporation, including the location of the boundaries, and persons wishing to contest the inclusion of land should appear in the county court and do so prior to such finding: *State ex rel.* v. *Port of Bay City,* 64 Or. 139 (129 Pac. 496); *Smith* v. *Hurlburt,* 108 Or. 690 (217 Pac. 1093).

But as it appears from the pleadings and testimony that the plaintiffs appeared before the county commissioners and objected to the incorporation of the district and to the inclusion of their lands within the district, upon the ground that the lands themselves furnish more water for domestic use than was required for that purpose, and commenced these suits and obtained a temporary restraining order, restraining the county commissioners from making any proclamation, finding or order to the effect that the district had been duly organized and incorporated, these proceedings in themselves alone are not sufficient to constitute an adjudication of the matters and things alleged by plaintiffs in their complaint, and not being *res judicata* of the matters thus alleged, the plaintiffs are not barred or concluded of the right to have these matters determined in these suits.

Plaintiffs' first objection to the validity of the proceedings is without merit. This objection is that both the petition filed with the clerk and the notice of election are void for uncertainty because the description recited in both, of the lands embraced within the district, is so indefinite and uncertain that without the aid of a surveyor the exterior boundaries of the district cannot be ascertained. The description is the same in both instruments. It starts at a definite, fixed and established point and follows the exterior boundaries of the proposed district. Each course and distance around the entire district is stated. The distance of the various courses is sometimes stated as so many feet more or less but each course ends at and is tied to some definite established point or line, and for the most part the courses either follow some section or quarter-section line or some established road, highway or the exterior boundaries of some incorporated city or town.

2-4. It is a settled rule in this jurisdiction that any description sufficient for a deed is sufficient to describe the boundaries of a municipal corporation: *Smith* v. *Hurlburt, supra,* and authorities there cited. The description in a deed of land conveyed must be sufficiently definite and certain to enable the land to be identified or to furnish the means of identifying the land under the maxim, *Id certum est quod certum reddi potest* (That is certain which may be rendered certain): See 2 Devlin on Deeds (3 ed.), § 1010. Nothing appears in the evidence which would cause any surveyor the slightest difficulty in tracing upon the ground from the description given the exterior boundaries of the proposed district, and for that reason the description is sufficiently definite and certain. The rule, therefore, correctly stated by Mr. Chief Justice McBRIDE, speaking for the court in the

case cited by plaintiffs, of *State ex rel.* v. *Port of Bayocean,* 65 Or. 506 (133 Pac. 85), that "a defective description of a boundary in a deed may be corrected by a suit to have it reformed according to the true intent of the parties, but a misdescription in an election notice cannot be corrected nor reformed by any sort of proceeding. It must be absolutely definite in itself," has no application to the description involved here.

Section 7230, Or. L., provides: "Communities may be incorporated as municipal corporations for the purpose of supplying their inhabitants with water for domestic purposes as in this act hereinafter provided."

5. It is insisted that the term "community" as used in this section should be given a narrow meaning and that it should not be held to include the inhabitants of a territory which in the instant case is seven miles in length and three miles in width and which comprises a small village named Rockwood and surrounding farm lands. It appears from the testimony that the village of Rockwood is near the center of the proposed district and that this village consists of three stores, a repair shop, a grange hall and about twenty residences and covers an area perhaps 2,000 feet square. A territory of this size and comprising the conditions above stated, it is argued, is not a community within the meaning of the statute. The act in question was passed for a special purpose, which was to enable the inhabitants of any given area lying wholly within one county and not having a sufficient supply of water suitable for the domestic use of its inhabitants to incorporate a municipal corporation whose sole powers and purposes should be to supply the inhabitants thereof with water for domestic purposes at the expense of the public. From this it

112 Or.—18

would seem to be the reasonable intent of the statute that the extent, size or area of the district or the uses to which the lands embraced therein are or may be applied are not conclusive upon the right or power of the inhabitants thereof to organize and incorporate such a municipality and also that the word "community" as used in the statute was intended to embrace and include all the inhabitants of a district having a community of interest in obtaining for themselves in common a water supply for domestic use, or what is the same thing, a common necessity of obtaining a water supply for that purpose. By giving to the statute this broad meaning, it seems to us that the purpose for which the statute was enacted will be best effectuated.

It is alleged and proved that for a large part of the lands embraced within the proposed district municipally supplied water is not required for domestic use; that these lands are abundantly supplied from wells, springs and streams with more water suitable for domestic use than can be used now or hereafter upon them. In the two suits the plaintiffs number, in all, about 115 persons. All of them own land within the proposed district and most of them are engaged in farming and reside upon their lands and have a sufficient and satisfactory supply of water for their domestic use. The proposed district extends easterly from the city limits of Portland to Troutdale, a distance of about seven miles. It is about three miles in width. It has an estimated population, according to the proponents of the district, of only 1,835 persons, or less than one person for every eight acres contained in the district. Most of the territory within the district consists of farming land. The farms range in extent from a few acres to as high as 300 acres or more. These lands are used for raising

fruit, berries and other agricultural products and for dairying purposes. The record contains about 1,400 pages of testimony, and this testimony is too voluminous for extensive reference to be made thereto.

One of the plaintiffs, W. C. Spence, has a farm of which thirty-five acres is included within the district. This farm is situated but a short distance from the town of Troutdale. He is engaged in raising fruit, celery and other farm products, and dairying. Upon that part of the land which lies within the proposed district he has three large springs, from the water of which he operates a public utility, his rates therefor being fixed by the Public Service Commission of Oregon. He supplies his entire needs upon the farm as well as those of about fifty customers in the town of Troutdale, the railroad company, the Sun Dial Ranch and the old Union Meat Company. In answer to the question of whether the proposed district would be of any benefit to him, he testified:

"I don't see where the benefit would come to me. I have got water coming out of the well at 51 degrees summer and winter. I have got 1,300,000 gallons running to waste so I can't see where the benefit would be. Q. What is the quality of your water? A. The very best in the state."

Another plaintiff, S. P. Osburn, owns about eighteen acres of land within the proposed district. He has a large spring which furnishes him with an abundance of water. He supplies himself and fourteen others with water, and he testified that during the driest season of the year he requires a six-inch spillway to carry away the unused water running to waste from the spring.

A. C. Ruby, one of the plaintiffs, owns 338 acres of farm land within the district upon which he raises blooded stock. He has a water supply sufficient for

his needs and a system for its distribution installed upon the place. He testified:

"I am not using the hundredth part of the water, the running water, the spring water that I have on the farm."

It is established by the testimony that most, if not all, of the other plaintiffs have sufficient water upon their lands for all purposes which is obtained from wells, springs or running streams, either upon their land or in close proximity thereto. Some of them participated in the election. How they voted is not disclosed. Nothing has been established which in any way estops the plaintiffs, or any of them, from contesting the inclusion of their lands within the district. A statute which would compel all of these plaintiffs to abandon a sufficient and satisfactory water supply of their own as well as those systems now installed upon their land for the distribution of the water, and coerce them to substitute in lieu thereof a municipally owned and furnished water supply and system,thereby subjecting their lands to the burden of additional taxation and to the lien of municipally issued bonds, not necessary for their needs and of no benefit to them, would be harsh, arbitrary and oppressive, and, we think, would clearly violate the "due process" clause of the federal Constitution. It would, for the benefit of others, deprive these plaintiffs of their property without any direct or indirect benefit to them. Such a statute could not be upheld upon any sound principle. The statute, however, confers no such power for it provides:

"The boundary lines of any municipal corporation created under the provisions of this act, shall include only such territory as may in reason be served by the water supply or system thereof." Section 7246, Or. L.

The provisions of the statute just alluded to were intended to exclude from a district of this nature all lands which will not, to some extent at least, be directly or indirectly benefited by the proposed system. The principle applicable to such a district is the same as that applicable to a drainage district, and this principle was stated by Mr. Justice McKENNA in *Myles Salt Co.* v. *Iberia Drainage District*, 239 U. S. 478 (L. R. A. 1918E, 190, 60 L. Ed. 392, 36 Sup. Ct. Rep. 204, see, also, Rose's U. S. Notes), as follows:

"It is to be remembered that a drainage district has the special purpose of the improvement of particular property and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. *Wagner* v. *Baltimore, ante,* p. 207. We are not dealing with motives alone, but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property but solely of the improvement of the property of others—power, therefore arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

While the testimony discloses that there is a considerable area within the proposed district requiring a supply of water which can best be furnished by a municipal corporation, nevertheless, for the reasons stated the decree appealed from must be reversed.

A decree will therefore be entered here decreeing that the proceedings leading up to the attempted organization and incorporation of the proposed Rockwood Water District are null and void and of no effect.

REVERSED AND DECREE ENTERED.

McBRIDE, C. J., and BURNETT and COSHOW, JJ., concur.