Odd Fellows Oakridge Cemetery Association; Palm—I Will Lodge No. 58; Baptist Home and Hospital; and Pipefitters Association Local Union 597—U. A., Plaintiffs, v. Oakridge Cemetery Corporation, Village of Westchester and John Nuveen & Co., Defendants-Appellees.

Appeal of Odd Fellows Oakridge Cemetery Association; Palm—I Will Lodge No. 58, and Pipefitters Association, Local Union 597—U. A., Plaintiffs-Appellants, and of Verna Upell Albright, et al., Additional Appellants. Odd Fellows Oakridge Cemetery Association; Palm—I Will Lodge No. 58; Baptist Home and Hospital; and Pipefitters Association Local Union 597—U. A., Plaintiffs, v. Oakridge Cemetery Corporation, Village of Westchester and John Nuveen & Co., Defendants-Appellees.

Appeal of Verna Upell Albright, et al. from orders denying their applications to intervene as Parties Plaintiff.

Gen. Nos. 47,131 and 47,132, consolidated.

First District, Third Division.

June 21, 1957.

Rehearing denied September 27, 1957.

Released for publication September 30, 1957.

Schultz, Krinsley, Voorheis & Hedberg, of Chicago (Raymond Harkrider, and Robert B. Moore, both of Chicago, of counsel) for appellants. Hugh J. McCarthy and John J. Enright, of Chicago, attorneys for Pipefitters Association Local Union 587—U. A., appellant.

Friedlund, Levin & Friedlund, Raymond A. Smerge, Tenney, Sherman, Bentley & Guthrie, and Charles F. Grimes and William B. Garrett, all of Chicago (S. Ashley Guthrie, Elmer M. Leesman, William B. Garrett, and Raymond A. Smerge, all of Chicago, of counsel) for defendants-appellees.

The court adopts the following opinion, written by JUDGE NIEMEYER, as the opinion of the court.

Three of the original plaintiffs and 106 individuals, owners of or interested in burial lots and grave sites

in Oakridge Cemetery, owned, operated and maintained by defendant Oakridge Cemetery Corporation, hereafter called The Cemetery, appeal from a decree dismissing for want of equity the complaint of the original plaintiffs to enjoin the erection by defendant Village of Westchester, hereafter called Westchester, of a steel water standpipe and a pumphouse on a parcel of land 100 feet square, hereafter called the "subject site," which The Cemetery had contracted to sell and has conveyed to Westchester, and for other related relief. Forty-three of the individual appellants also appeal from an order denying their petitions to become additional parties plaintiff. These appeals, taken direct to the Supreme Court, have been transferred to this court and consolidated here for hearing and disposition. Defendants do not concede the right of the 106 individual appellants to join in this appeal. However, they do not object, as they say that no inconvenience or delay will result from the joinder. We do not pass on the right of these parties to appeal. All appellants are hereafter called plaintiffs.

The Cemetery was organized in February, 1917 as a corporation for profit under the General Corporation Act of 1872, as amended, to ". . . own, maintain and operate a cemetery and to acquire by purchase, or otherwise, lands for cemetery purposes, . . . and to dispose of said lands . . . for the purpose of the burial of the dead." It acquired the 118 acre tract on which Oakridge Cemetery is now located. Some of the land was then devoted to cemetery purposes. All the land, except a parcel of approximately nine acres, hereafter called the "utility tract," in the southeast corner of the cemetery, has been platted for burial purposes, with appropriate driveways and walks affording access to the burial lots and single grave sites. Although there is a dispute as to the use of the utility tract since 1917, it is undisputed that there were no burials in the

tract. A part was used as a sod nursery and a place to store and burn used flowers and grave decorations and to pile leaves and black dirt. The remainder of the tract was planted with grass and kept in a park-like condition. There are unsold 31,700 grave sites in platted lots and a large number in single grave sites in sections not platted into lots. Representatives of The Cemetery testify that if sales do not exceed the average of recent years these grave sites will not be disposed of in less than fifty years.

The southern boundary of The Cemetery and the northern boundary of Westchester are contiguous. The subject site extends 100 feet along the boundary line between the defendants and 100 feet north into the utility tract. Its east line is 784 feet west of the east line of The Cemetery and its west line is a little more than 100 feet east of burial grounds of The Cemetery. Westchester owns and operates a municipal water supply and distribution system. The City of Chicago furnishes water to Westchester and the villages of Broadview and LaGrange Park under contracts the material terms of which are stated in Baltis v. Village of Westchester, 3 Ill.2d 388. On February 22, 1955, Westchester by ordinance authorized the purchase of the subject site, on which to erect a standpipe and pumphouse. By deed dated April 6, 1955 The Cemetery conveyed the property to Westchester in consideration of $17,000. The deed contained no restrictions on the use of the property by the grantee. Two controlling questions are presented on this appeal. Can The Cemetery legally convey the subject site to Westchester? Is the erection of a standpipe and pumphouse on the subject site permissible under the zoning ordinance of the County of Cook?

Plaintiffs contend that the deed from The Cemetery to Westchester is void; that The Cemetery lacks power to convey land except for burial purposes. They rely on an act of 1895 (Ill. Rev. Stats. 1955, Cemeteries,

Chap. 21, par. 29) amending section 1 of "An Act in relation to cemeteries" (Laws of Illinois, 1891, page 86) by striking therefrom the words "not exceeding twenty acres," so that the section as amended reads as follows:

"That all cemetery associations, or companies incorporated for cemetery purposes, by any general or special law of this State may acquire by purchase, gift or devise, and may hold, own and convey for burial purposes only, so much land as may be necessary for use as a cemetery or burial place for the dead."

The General Corporation Act of 1872 (Ill. Rev. Stats. 1874, page 285) authorized the forming of corporations for profit for any lawful purpose (except banking, insurance, etc., not material here), including "organizations for the purchase and sale of real estate for burial purposes only" (Laws of Illinois, 1879, page 82), with power to "own, possess and enjoy so much real and personal estate as shall be necessary for the transaction of their business," and to "sell and dispose of the same when not required for the uses of the corporation."

The statute of 1891 is a single section, one sentence act, restricting the land which a cemetery corporation might acquire and hold to "not exceeding twenty acres." When this restriction was stricken by the amendment of 1895, because, as plaintiffs say, it "apparently proved too inelastic, at least for cemeteries in the larger metropolitan communities," the statute was identical in effect with the General Corporation Act of 1872, which limited the land, which corporations for cemetery and burial purposes formed thereunder could own and possess, to "so much . . . as shall be necessary for the transaction of their business," and restricted the sale of such land to sales for "burial purposes only."

The restriction on sales of land, in carrying on the business of the corporation, to sales "for burial purposes only" has no connection with the right to sell

and dispose of land lawfully acquired but no longer necessary for the corporate business. In selling land for burial purposes only, a cemetery corporation does not transfer title in fee. It grants an easement for burial purposes only. Brown v. Hill, 284 Ill. 286. In disposing of unneeded lands the corporation divests itself of all title to the land. It acts in compliance with the policy of the state not to permit corporations to own real estate beyond what is necessary for their corporate business. National Home Bldg. & Loan Assn. v. Home Savings Bank, 181 Ill. 35, 42; Carroll v. City of East St. Louis, 67 Ill. 568. If it does not act, the state may by appropriate action compel it to act.

■ The Act of 1872 expressly authorized corporations, including those for cemetery purposes formed thereunder, to sell and dispose of land not required for the uses of the corporation. The statutes of 1891 and 1895 were silent on this subject. The power given in the Act of 1872 existed independent of the statute. In Gulf Lines Connecting R. v. Golconda Northern Ry., 290 Ill. 384, in speaking of the power of a corporation, organized under the act providing for the incorporation of railroad companies, to dispose of land which it could no longer use for corporate purposes, the court said (p. 391):

"Ownership of land by a corporation carries with it the power of disposition, if such power is not restrained by statute or considerations of public policy. (7 R. C. L. 571.) The Toledo Company during the ten-year period had lawful power and authority to acquire, by purchase, title in fee simple for necessary right of way for its line of railroad. When it failed to complete its road within ten years it ceased to have the right to build it, but it still held title to the land it had pur-

384

chased and had the right to convey it. (3 Thompson on Corp. secs. 2369, 2807.)"

■ Corporations are required to dispose of excess land. In Calumet and Chicago Canal and Dock Co. v. Conkling, 273 Ill. 318, the right of the dock company to sell land not needed for corporate purposes was involved. The company was created by a special act and given power to "purchase, possess and occupy real and personal estate" and to "sell, lease and employ the same in such manner as it shall determine, . . . ." The court said (323–324):

"The express power given by section 1 of the statute creating the corporation to purchase and sell real estate did not confer authority to deal in real estate by buying and selling it. The only real estate the corporation was authorized to acquire was such as was reasonably necessary to enable it to carry out the objects of its creation, which were the construction and operation of a canal, ship yards, docks, warehouses, etc. It is contrary to the public policy of this State to permit a corporation to own land not reasonably necessary to enable it to transact its business, and if it acquires land not necessary for that purpose it is required to dispose of it."

The duty to dispose of unneeded land has not been changed by the General Corporation Act of 1919 or the Business Corporation Act of 1933, except as to corporations formed under the latter act with power to deal in real estate without limitation. (1 Illinois Business Corporation Act, Annotated, Chicago Bar Edition, 1947, page 58; 28 Illinois Law Review, 1934, pages 997, 1002.)

■ No stockholder of The Cemetery objects to the conveyance to Westchester. The sale was properly authorized by the directors and stockholders, and their action is a determination by them that the subject site

is unneeded land. The evidence amply supports defendants' contention that the disposal of the subject site will not interfere with the operation and maintenance of The Cemetery, impair the integrity of The Cemetery as a burial place, or deprive lot and grave owners of reasonable access to their lots and graves.

This conclusion renders unnecessary a determination of defendants' contention that under section 8 of the Business Corporation Act of 1933 (Ill. Rev. Stats. 1955, Chap. 32, par. 157.8), plaintiffs cannot attack the sale to Westchester as an ultra vires act; that by the amendment of the charter of The Cemetery in 1949 to include among its powers the purchase and sale of real estate, The Cemetery was thereafter empowered to deal without restriction with land acquired long before for cemetery purposes.

Under the Cook County zoning ordinance the subject site is in F–District (Farming), in which a "community water works" is a permitted use. Westchester and the villages of Broadview and LaGrange Park are contiguous municipalities within the Sanitary District of Chicago. Westchester and Broadview get their water from the City of Chicago under a contract between that city and Westchester and Broadview jointly. Each village maintains its own water system within its own corporate limits to supply its own consumers. LaGrange Park, and the Hines and Vaughan hospitals, formerly within Broadview, receive their water from the Westchester system under separate contracts with Westchester and Broadview jointly. The proposed standpipe will benefit Broadview and LaGrange Park and the consumers in their respective corporate limits, as well as Westchester and its consumers.

Plaintiffs insist that the water works of a system so extensive is not a "community water works." The

word "community" has been used in several state statutes. In People ex rel. Stout v. Drennan, 307 Ill. 482, where the validity of a community high school district was involved, the court said: "The word 'community' has been defined by this court as a body of people having common rights, privileges or interests, or living in the same place under the same laws and regulations, or having an association of interests or a common character or likeness." See 15 C. J. S. 642—Community. In Hamilton v. Rudeen, 112 Ore. 268, 224 Pac. 92 (1924), the court defined the word "community" as used in a statute permitting communities to incorporate as municipal corporations for the purpose of supplying their inhabitants with water for domestic purposes. The territory of the proposed corporation was seven miles long and three miles wide. It included rural territory and a small village of three stores, a repair shop, a grange hall and about twenty residences, covering an area about 2,000 feet square. The court said (p. 94):

"From this it would seem to be the reasonable intent of the statute that the extent, size, or area of the district, or the uses to which the lands embraced therein are or may be applied, are not conclusive upon the right or power of the inhabitants thereof to organize and incorporate such a municipality, and also that the word 'community' as used in the statute was intended to embrace and include all the inhabitants of a district having a community of interest in obtaining for themselves in common a water supply for domestic use, or, what is the same thing, a common necessity of obtaining a water supply for that purpose."

Statutes in which the word "community" is used to refer to utilities serving the inhabitants of more than one municipality, include:

"Secs. 33.1—1, 33.1—5, 33.1—8, 33.1—10 of the Cities and Villages Act (Ch. 24, Ill. Rev. Stat.), relating to 'community buildings' serving residents of one or more cities and villages in surrounding areas;

Secs. 152 and 160(a) of Ch. 139, Ill. Rev. Stat., referring to community buildings in townships;

Sec. 34.1, Ch. 16½, Ill. Rev. Stat., relating to 'community banks'."

■ The water works, of which the proposed standpipe and pumphouse are essential parts, is a "community water works" within the meaning of the word "community" as defined above and employed in the statutes cited and in the zoning ordinance. It serves inhabitants of contiguous villages living in a compact area and having a common interest in obtaining an adequate and uninterrupted supply of water. The Cook County authorities who issued the building permit for the construction of these improvements rightly interpreted the ordinance.

■ The erection, maintenance and operation of the proposed standpipe and pumphouse on the subject site being a permissible use under the ordinance, there is no ground for enjoining their erection. They are not a nuisance per se. The principal objection urged by plaintiffs that the standpipe will be unsightly and out of place adjoining the beautiful and well-kept ground of the cemetery, is not a legal objection.

We cannot without inexcusably extending this opinion answer each point urged by plaintiffs in their exceedingly voluminous briefs. Having concluded that The Cemetery was acting within its corporate powers in selling the subject site as unneeded land, never platted or used as burial ground, and that the erection of the proposed standpipe and pumphouse on the site is permissible under the county zoning ordinance, we have

388

determined the controlling questions presented on appeal adversely to plaintiffs. The dismissal of the complaint for want of equity is affirmed.

■ The appeal of the 43 individual appellants, who sought to be made additional plaintiffs, is without merit and is now moot. The motion of these plaintiffs was presented by counsel for the original plaintiffs after the hearing before the master had been concluded and the case was pending in the trial court on exceptions to the master's report. These appellants adopted the pleadings of the original plaintiffs, the evidence introduced on their behalf, and all actions of plaintiffs in the case. They assert no new or additional grounds for the relief prayed, and, of course, do not complain of the representation of plaintiffs by counsel. Whatever benefits they might obtain by becoming parties were obtained by their becoming appellants on the appeal. Permitting them to become party-plaintiffs in the trial court rested in the discretion of the trial judge. This discretion was not abused.

The decree and the order appealed from are affirmed.

Decree and order affirmed.

BURKE, P. J. and FRIEND, J.

BRYANT, J., took no part.