## FORD et al. v. FORD.

A description of premises intended to be conveyed as all ranches, lands, houses, barns, stables, and corrals belonging to F. Bros. Cattle Company, situated on the Belle Fourche river, Butte county, D. T., and commonly known as the headquarters of the F. Bros. Cattle Company, was sufficiently certain.

The office of a description in a deed is not to identify the premises, but furnish the means of identification and under Civ. Code, § 2437, providing that that is certain which can be made certain, a description is sufficient if a person of ordinary prudence, acting in good faith and making inquiries suggested by the description, would be enabled to identify the property.

Civ. Code, § 1250, provides that the whole of a contract is to be taken together, so as to give effect to every part. An instrument granted and conveyed to second party premises described and contained covenants equivalent to a warranty deed, but also contained a further provision that first party agreed to convey to second party all lands, which were the same as the premises described, pre-empted by first party and patent applied for as soon as such patent was received by him from the government. **Held,** that the instrument was not merely an executory contract to convey such lands in the future, but was an absolute and completely executed transaction.

Stat. U. S. § 2262, making any contract, before final proof, for the disposition of public land settled on under the pre-emption act, void, prohibited a pre-emption settler from transferring, before final proof, to a firm of which he was a member, title to such land.

A conveyance of a homestead, void because the wife did not join, was nevertheless color of title within Code Civ. Proc. § 54, providing that every person in the actual possession of lands under color of title for 10 years, having paid the taxes thereon, shall be held the legal owner to the extent of his paper title.

An heir stands in privity with the ancestor, and is estopped by the same facts that would estop the ancestor.

A husband who accepted the full benefit of the value of his homestead in the settlement of a copartnership transaction surrendered possession to his grantee, and established another homestead, and gave effect to the validity of the transaction of which such conveyance was only a part, and did not thereafter claim any interest therein or pay any taxes thereon, is estopped to thereafter claim that he is the owner as against such conveyance, notwithstanding its invalidity because his wife did not join therein.

(Opinion filed, Feb. 9, 1910.)

Appeal from Circuit Court, Butte County. Hon. LEVI McGEE, Judge.

Action by Celestia C. Ford and another against Anna J. Ford. Judgment for defendant, and plaintiffs appeals. Affirmed.

*Maxwell & Armstrong, Fowler & Fowler,* and *Harry P. Atwater,* for appellants. *John R. Russell* and *Kellar & Stanley,* for respondent.

McCOY, J. This suit involves title to a certain quarter section of land situated in Butte county. It appears from the record: That Hugh Ford in August, 1885, made final pre-emption proof and acquired title from the United States to said land. That prior to final proof, and afterwards, until October 26, 1886, the said Hugh Ford and his brother, Michael C. Ford, were co-partners in a stock ranch, and that said land was used in connection with and as a part of said partnership business, and that on the 26th day of October, 1886, the said Hugh and Michael C. Ford dissolved, by mutual consent, said partnership, and made final settlement of all their copartnership affairs, the said Michael C. paying to Hugh the sum of $19,000 for all the right, title, and interest of said Hugh in and to said partnership property, including said land, and that on said date the said Hugh Ford executed and delivered to said Michael C. Ford a contract in writing, in words and figures as follows: "Know all men by these presents: That Hugh Ford, of the county of Butte and territory of Dakota, party of the first part, for and in consideration of the sum of nineteen thousand dollars in hand paid before the delivery of these presents by Michael C. Ford of Chicago, of the county of Cook and state of Illinois, party of the second part, the receipt whereof is hereby acknowledged, has bargained, sold, granted, and conveyed, and by these presents does bargain, sell, grant, and convey unto the said party of the second part, his executors, administrators, and assigns, all his right, title, and interest in and to that certain herd of cattle, known as Ford Brothers cattle branded as follows: 'F' on right side of hip. And also those cattle branded 'HF' on right side. Also those cattle branded 'F' on right side or left side. Also all right, title, and interest in and to all horses owned and used by said cattle Co. branded 'F' on right shoulder or hip. Also all right, title, and interest in and to all ranches, lands, houses, barns, stables, corrals,

agricultural implements, and any and all other property pertaining to and belonging to said Ford Brothers Cattle Co. And the said Hugh Ford further agrees to convey by good and sufficient deed to the said M. C. Ford, the title to all lands (160 acres) pre-empted by him (Hugh Ford )and patent applied for as soon as said patent is received by him from the United States government, and it is further agreed and understood that all debts incurred and liabilities contracted after this date (Oct. 25th, 1886), are to be assumed and paid by M. C. Ford. ·The above described ranch, houses, barns, etc., are situated on the Belle Fourche river, Butte count, D. T., and commonly known as the headquarters of the Ford Brothers Cattle Co. To have and to hold the same unto said party of the second part, his executors and administrators and assigns, forever. And the party of the first part does for himself and his heirs, executors, and administrators covenant and agree to and with the said party of the second part to warrant and defend the property hereby sold unto the said party of the second part, his executors, administrators and assigns against all and every person and persons whomsoever. In witness whereof I have hereunto set my hand this 26th day of October, A. D. 1886. [Signed] Hugh Ford." That on the 11th day of December, 1884, the said Hugh Ford was married to the plaintiff Celestia C. Ford, and that the plaintiff Bessie E. Ford was born to the said Hugh Ford and Celestia C. Ford on September 22, 1885. That at the time of the execution of the said contract, and at all the times after the said marriage of said Hugh Ford, he resided upon the land in question, in a dwelling house situated thereon, together with the members of his family, and that the said Celestia C. Ford, his wife, did not join with him in the execution of said contract whereby the said Hugh Ford undertook to convey said land to Michael C. Ford. That, immediately after the making of said contract, the said Hugh Ford, together with his wife and child, removed from said land to the city of Deadwood, and in February, 1887, again removed to Hot Springs, in the state of Arkansas, and there immediately acquired another home, wherein the said Hugh Ford and his family continuously resided until his death in January, 1890, and that after

his death the plaintiff continued to reside in the Arkansas home, and which property is still retained by plaintiffs as their home. That immediately after the making of said contract, on October 26, 1886, and the removing of said Hugh Ford and family from said premises, the said Michael C. Ford, with his family, took possession of and continuously resided thereon until the time of his death in December, 1890. That the said Michael C. Ford left a last will and testament, by the terms of which Anna J. Ford, his wife, the defendant in this case, became his sole heir and devisee. That at all times since the 1st day of November, 1886, the said Michael C. Ford during his life and Anna J. Ford, after his death, have been in possession of said premises, and have paid all taxes legally assessed against the same each and every year down to and including the present time, claiming to be the owners of said land under said contract of October 26, 1886. That at no time after the 26th day of October, 1886, during his life, had the said Hugh Ford ever claimed to be the owner of said land or to have any interest therein or to pay any taxes thereon, and at no time after October, 1886, have the plaintiffs or either of them ever claimed to be the owners or entitled to the possession of said premises, or to have any interest therein until the beginning of this action on June 5, 1905. It also appears from the record that a portion of the $19,000 consideration mentioned in said contract of October 26, 1886, was not paid until after the death of both Hugh and Michael C. Ford, and that said balance about the sum of $3,000 was probated against the estate of Michael C. Ford in 1891, and then paid. It also appears that no part of said $19,000 was ever repaid by said Hugh Ford or his heirs to Michael C. Ford or his heirs. The patent to said land was issued to Hugh Ford in the year 1888.

Findings and judgment were made and rendered in favor of defendant, and against both plaintiffs. The plaintiffs moved for new trial upon the insufficiency of the evidence to justify the findings and judgment. The motion for new trial being overruled, the plaintiffs appeal, urging that the judgment is not sustained by the findings. As we view this case, there is but very little dispute in the evidence, and that the real question before

this court is whether the findings warrant a judgment against either or both plaintiffs.

It is first contended by plaintiffs that the instrument dated October 26, 1886, did not purport, and was not intended by Hugh Ford, to convey title to the land in question to Michael C. Ford. In this contention we are of the opinion that the plaintiffs are in error. This contract in question contains words of conveyance and covenants of warranty equivalent to a warranty deed, and purports to convey all the right, title, and interest in and to all ranches, lands, houses, barns, stables, and corrals belonging to Hugh Ford situated on Belle Fourche river, Butte county, D. T., commonly known as the headquarters of Ford Bros Cattle Company. The evidence on the trial identifies the land in question in this action as the headquarters of Ford Bros. Cattle Company on Belle Fourche river, Butte county, and the evidence also tends to show that Hugh Ford by numerous statements made after the transaction, intended to convey this land to his brother by this instrument. We are of the opinion that this description was sufficient to convey the lands in question. The office of a description in a deed is not to identify the lands, but to furnish the means of identification, and that a description is considered sufficiently certain which can be made certain, and that a description in a deed would be deemed sufficient if a person of ordinary prudence, acting in good faith and making inquiries suggested by the description given in such deed, would be enabled to identify the property. Jones on Real Prop. Conveyancing, § 323; Civ. Code, § 2437. The said contract also contained the provision: "The said Hugh Ford further agrees to convey by good and sufficient deed to said M. C. Ford the title to all lands (160 acres) pre-empted by him (Hugh Ford) and patent applied for as soon as said patent is received by him from the United States Government." Plaintiffs contend that the said contract of October 26, 1886, at most was only an executory contract agreeing to convey said lands in the future, which was never done. But we are of the opinion that this clause of this contract must be construed in the light of all other portions and parts of the contract, and also in the light of the surrounding circumstances. The granting and

conveying clause which refers to the same property as the head-
quarters of the Ford Bros. Cattle Company is absolute in its
terms, and this clause in relation to future conveyances after
patent issued to give it the construction contended for by plain-
tiffs would be in direct conflict with the absolute conveyance
clause. . Considering the fact that final proof was made in August,
1885, and that the patent did not issue until 1888, and this con-
tract, then, being made between these two dates, after final proof,
but before patent, the said parties evidently had these facts in
mind. and made the provision in question to cover any con-
tingency that might happen by reason of the patent not yet having
issued, and that, if for any reason the contract of conveyance
should turn out not to be valid by reason of being made before
the issuance of patent, then Hugh Ford would make a further
deed to cure the defect, if any such should occur. When it is
possible, the different clauses of the contract should be so con-
strued as to harmonize and give effect to every part thereof
according to the expressed intention of the parties as appears from
the wording of such contract. Civ. Code, § 1250. From the
fact that immediately after the making of said contract he stated .
that he had sold everything to his brother and immediately re-
moved from the premises and never thereafter made any claim
thereto, and removed to another state and established a home
there, would reasonably seem to indicate that Hugh Ford intended
the conveyance of 1886 as an absolute and completely executed
transaction rather than as an executory one.

The appellants contend that the premises in question on the
26th day of October, 1886, was the homestead of Hugh and
Celestia C. Ford under the homestead laws of the territory of
Dakota then in force, and that the contract of that date, signed
by Hugh Ford alone, in which Celestia C. Ford did not join, in
so far as it attempted to convey title to said premises from Hugh -
to Michael C. Ford, was void under section 2451, Comp. Laws,
then in force, and which provided that the conveyance by the
owner of such homestead shall be of no validity, unless the hus-
band and wife, when the owner is married, both concur in and
sign the same joint instrument; while the respondent contends that

the land in question was on the 26th day of October, 1886, partnership property and not subjected to the homestead right, and therefore the signature of the plaintiff Celestia C. Ford was not necessary to the validity of said instrument. In this contention we believe appellants are right. It appears from the evidence that in 1879 Hugh and Michael C. Ford entered into said copartnership at a time long before final proof, when the premises in question was public land, and that the said Hugh Ford as a pre-emption settler on public land was prohibited, by section 2262, Stat. U. S., from alienating or disposing of said land, which federal statute makes any contract, before final proof, for the disposition of the title to public land settled on under the pre-emption act, void. It necessarily follows, then, that Hugh Ford at the time of entering into the partnership agreement had no power to transfer the title of said land to the firm of Ford Bros., and the firm could in no manner, before final proof, acquire title thereto. Clark v. Bayley, 5 Or. 343; Church v. Adams, 37 Or. 355, 61 Pac. 639. It appears from the evidence that Hugh Ford and his wife established their residence on the said premises nearly a year prior to final proof, and that they were residing in the dwelling house thereon at the time of final proof, but we are of the opinion that the homestead right to said premises under the territorial law had its inception and attached thereto the moment final proof was made and accepted, and it necessarily follows that any conveyance of said premises after such final proof and while the said Hugh Ford and his wife still continued to reside on said premises was of no validity, unless Hugh and Celestia C. Ford, his wife, both concurred in and signed the same joint instrument. The question of homestead, as we view the circumstances of this case, is only material in so far as it relates to the validity of the contract of October 26, 1886. The evidence shows that the said Hugh Ford before his death acquired another homestead in the state of Arkansas which is still retained by plaintiffs. Plaintiffs by this action are not now seeking to establish a homestead right in the premises in question, but are claiming to be the fee owners as heirs and successors in interest of Hugh Ford, deceased, on the ground that the contract of conveyance was

void and transferred no title from Hugh to Michael C. Ford and his heirs. An entirely different question would have been presented if Hugh Ford and his wife had not established a home elsewhere, and had attempted soon after this contract to regain possession of said premises as their homestead by reason of the invalidity of the contract of conveyance, or if the plaintiff Celestia C. Ford had attempted to regain such possession herself.

Respondent contends that the plaintiffs are barred from claiming any title or interest in said premises by reason of the provisions of section 54, Code of Civ. Proc., which provides that every person in the actual possession of lands under claim and color of title made in good faith, and who shall have continued in such possession for ten successive years, and shall also during said time have paid all taxes legally assesssed on said lands shall be held and adjudged to be the legal owners of said lands to the extent and according to the purport of his paper title. We are of the opinion that this position is well taken in so far as it relates to Celestia C. Ford. The good faith of the defendant and her husband is not questioned. Although the contract of conveyance of October 26, 1886, was void and conveyed no title, it was never-- theless color of title within the meaning of said section 54. Murphy v. Nelson, 19 S. D. 197, 102 N. W. 691; Murphy v. Pierce, 17 S. D. 207, 95 N. W. 925; Murphy v. De Foe, 18 S. D. 42, 99 N. W. 86; Parker v. Vinson, 11 S. D: 381, 77 N. W. 1023. But the provisions of said section 54 are not applicable to Bessie E. Ford by reason of the provisions of section 56 ,Code Civ. Proc., which provides that said section 54 shall not extend or apply to an adverse title of a minor under 21 years of age, and further provides that such minor within three years after becoming 21 years of age may begin an action to recover possession of said lands. The record shows that Bessie E. Ford was born September 22, 1885, and was not yet 21 years of age at the time this suit was commenced, June 7, 1905; or, if it should be considered that Bessie E. Ford reached her majority at 18 years of age, under section 10 of the Civil Code, still three years thereafter had not yet elapsed when this action was commenced. And this leads us up to the question whether or not Hugh Ford at the time of his

SOUTH DAKOTA REPORTS.

death was estopped from claiming any interest or title in said land that would now also estop Bessie E. Ford as heir.

In order to determine the rights of Bessie E. Ford, it will be necessary to consider the status of her father's rights at the time of his death. An heir stands in privity with the ancestor, and would be estopped by the same facts that would estop the ancestor. Jones v. Jones, 20 S. D. 632, 108 N. W. 23; 16 Cyc. 718; 11 Am. & Eng. Ency. 394. The record shows that in February, 1887, Hugh Ford acquired another home in Hot Springs, Ark., where he continuously resided until his death, and where the plaintiffs still reside until this day. It may be inferred that Hugh Ford and family received the same benefits from the Arkansas home that they would from the Dakota home, had they continued to occupy that. It seems to be well settled that no one is entitled to two homestead rights at the same time, and when Hugh Ford and wife acquired the homestead in Arkansas, where the law of homestead, in the absence of proof to the contrary, is presumed to have been the same as in the Territory of Dakota, the homestead right to the land in question became abandoned, and thereupon the right of Hugh Ford and his wife to contest the question of homestead right to the land in question became extinct. Waples on Homestead, 576-578; Adams v. Gilbert, 67 Kan. 273, 72 Pac. 769, 100 Am. St. Rp. 456; Hall v. Fullerton, 69 Ill. 448; Thompson, Homesteads & Ex. § 483. In Adams v. Gilbert, supra, the court said: "The husband might by his actions confirm a deed to the homestead executed by himself alone, or estop himself from denying its validity, so as to make it convey title after its homestead character had ceased. He surrendered the premises to the one holding under the deed which he had executed. Having executed the deed, which, had he continued to occupy the premises as a homestead, would have conveyed nothing, he did more. He abandoned the homestead, surrendered the premises, put the grantee into prosession, gave effect to a deed which while the premises remained a homestead had no effect, but, ceasing to be a homestead, it might and did operate." While we do not deem it necessary to decide in the case at bar that the conveyance became operative on the abandonment of the home-

stead, still whether such conveyance became operative or not as a conveyance we are of the opinion that by his acts Hugh Ford, after this homestead right had ceased to exist and at the time of his death, was estopped from claiming himself to be the owner of the land in controversy as against such conveyance, notwithstanding, at the time the conveyance was executed by him, it possessed no validity as a conveyance of the land in question. He had voluntarily accepted and retained the full benefit of the value of said land in the settlement of the copartnership transaction, had surrendered possession himself, had put his brother into possession, had established another homestead for himself and family in the state of Arkansas, and gave effect to the validity of the transaction of which this conveyance was only a part, and never after claimed any interest therein or paid any taxes thereon, or in any manner sought to exercise any dominion or acts of ownership over the same. Under such circumstances, he was clearly estopped by his acts in having voluntarily accepted and retained the benefits of the partnership settlement. It would not seem equitable or just that he should receive the benefit of the value of the land, and his heir, claiming under him, should also be permitted to recover the land away from the possession of the person who paid full compensation therefor. This would have the effect of giving him in reality the benefit of two homesteads. While the homestead law must be liberally construed to effect its purposes, still it was never intended as an engine of fraud. Where one having the right to accept or reject a transaction voluntarily takes and retains the benefits thereunder, he becomes bound by the transaction, and cannot avoid such transaction and its obligations by taking a position inconsistent therewith. Thus it has been repeatedly held that a person by accepting the benefits of a transaction may be estopped from questioning the existence or validity of a contract. So, too, under similar circumstances, one may be estopped from questioning the existence or validity of a deed. 16 Cyc. 790; Sterritt v. Young, 14 Wyo. 146, 82 Pac. 946, 4 L. R. A. (N. S.) 169. Neither will a party be permitted to take the inconsistent position of rejecting one part of an entire transaction and accepting the other part. 16 Cyc.

791.   With the homestead right abandoned and out of consideration, Hugh Ford himself was estopped from questioning any part of the copartnership settlement.

Finding no error in the record, the judgment of the circuit court is affirmed.