ELLEN L. PARKINSON vs. BOARD OF ASSESSORS OF MEDFIELD.*

Suffolk. April 3, 1985. — August 12, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation*, Real estate tax, abatement. *Real Property*, Easement.

Where a landowner, acting pursuant to statutory provisions, created a con-
servation easement by an instrument substantially restricting further de-
velopment of her land, but containing language providing that the use
of "[o]ne single-family residence with usual appurtenant outbuildings
and structures" would "not be prohibited . . . or considered inconsistent"
with the restrictions, this language rendered the easement so vague as
to preclude any identification of the servient estate, and thus invalid,
and consequently a municipal board of assessors correctly refused to
consider the easement in fixing the assessed value of the property.
[645-647]

APPEAL from a decision of the Appellate Tax Board.

*Casimir de Rham, Jr. (John A. Perkins & Christine Way*
with him) for the plaintiff.

*Charles Fuller, Jr.*, Town Counsel, for the defendant.

HENNESSEY, C.J. This is an appeal from a decision of the
Appellate Tax Board, which affirmed the refusal of the board
of assessors of Medfield (board) to abate the tax assessed on
real estate owned by Ellen L. Parkinson. We conclude that
the conservation easement granted by Parkinson, which placed
substantial restrictions on the future development of her land,
was invalid and unenforceable. Consequently, the board cor-
rectly refused to consider those restrictions when it assessed
the value of her property.

Ellen L. Parkinson was the owner of three parcels of land,
totalling 82.17 acres, in Medfield. The largest of these parcels
is over seventy-six acres, and contains a single family dwelling,
an attached two-car garage, and a barn. On June 16, 1980, pur-

---

*See opinion on rehearing, 398 Mass. 112 (1986). — REPORTER.

suant to statutory provisions which authorize easements de-signed to preserve land or water in natural or open condition, see G. L. c. 184, §§ 31, 32 (1984 ed.), Parkinson granted a conservation easement on all three of these parcels to The Trustees of Reservations. See St. 1891, c. 352. The easement prohibited, among other things, "the construction or placement of any building . . . or other temporary or permanent structure on, above or under the Premises," as well as "[a]ny use of the Premises, and activity thereon which, in the reasonable opinion of the grantee is or may become inconsistent with . . . the preservation of the Premises predominantly in their natural condition . . . ." The easement further provided that the use of "[o]ne single-family residence with usual appurtenant out-buildings and structures" would "not be prohibited . . . or considered inconsistent" with these restrictions. The board of selectmen of Medfield, as well as the Secretary of Environmen-tal Affairs, see G. L. c. 184, § 32, approved the easement, and it was recorded in the Norfolk County registry of deeds on October 30, 1980.[1]

It was the policy of the board "to assess land properly subject to a conservation easement or restriction at no more than 25% of full and fair cash value."[2] Nonetheless, when the board assessed Parkinson's real estate in fiscal 1982 and 1983 at $317,300 and $346,700, respectively, it refused to discount the value of her property. Instead, the board claimed that the conser-vation easement was invalid because it purported to apply not only to land, but also to Parkinson's residence and outbuildings.

Parkinson paid her taxes in full, and then filed timely appli-cations for abatement on assessments for both years. The board

---

[1] By an instrument dated April 9, 1981, Parkinson conveyed to the trustees "all of her right, title and interest" in the premises, reserving to herself a life estate, and stating that the conveyance was subject to the conservation easement granted in 1980. In light of our conclusion with respect to the ambiguity of the easement, we need not consider the board's further conten-tion that this conveyance, under the doctrine of merger, extinguished the easement. See generally Restatement of Property §§ 497-499 (1944).

[2] General Laws c. 59, § 11 (1984 ed.) provides that any land subject to a conservation easement under G. L. c. 184, § 31, "shall be assessed as a separate parcel" of real estate.

denied these applications, and Parkinson appealed to the Appellate Tax Board. At the hearing before the Appellate Tax Board, Parkinson presented the testimony of two expert witnesses. The first witness, a real estate appraiser, testified that the property at issue, when assessed in light of the easement's restrictions on development, was worth approximately $212,500. In making that determination, he calculated that occupation of the single family residence and outbuildings, expressly allowed by the easement, required the use of about seven acres of land. He then valued the house and this hypothetical seven acre parcel at $175,000. He valued the remainder of the land at only $500 an acre, because it was encumbered by the conservation easement. The second witness, an attorney for The Trustees of Reservations, testified over the board's objection to the validity of the easement.

The Appellate Tax Board concluded that G. L. c. 184, § 31, did not authorize a conservation easement to be placed on dwellings and appurtenant buildings, and thus affirmed the denial of the applications for abatement. Parkinson then appealed to this court. She claims that nothing in the language of G. L. c. 184, § 31, prohibits the kind of easement at issue here, and thus that the board erred in refusing to consider the easement when it assessed the premises. We conclude that the easement is invalid, not because it is prohibited by statute, but because its terms are so vague that it precludes any meaningful identification of the servient estate.

"While no particular words are necessary for the grant of an easement, the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements." *Dunlap Investors, Ltd.* v. *Hogan,* 133 Ariz. 130, 132 (1982), quoting *Oliver* v. *Ernul,* 277 N.C. 591, 597 (1971). *Hynes* v. *Lakeland,* 451 So. 2d 505, 511 (Fla. Dist. Ct. App. 1984). *Germany* v. *Murdock,* 99 N.M. 679, 681 (1983). *Vrabel* v. *Donahoe Creek Watershed Auth.,* 545 S.W.2d 53, 54 (Tex. Civ. App. 1976). See *McHale* v. *Treworgy,* 325 Mass. 381, 385 (1950). The instrument must be sufficiently precise that "a surveyor can go upon the land and locate the easement." *Vrabel* v. *Donahue Creek Watershed Auth., supra.* If the

instrument does not describe the servient land with the precision required to render it "capable of identification . . . the conveyance is absolutely nugatory." *McHale* v. *Treworgy, supra. Allen* v. *Duvall,* 311 N.C. 245, 249 (1984).

The board's inability to assess the property in light of the conservation easement is symptomatic of the easement's fatal ambiguity. The use of a single family residence, along with the "usual" outbuildings and structures, was excepted from the restrictions set forth in the instrument. According to the decision of the Appellate Tax Board, the appraiser who testified on behalf of Parkinson stated that such use would require "about" seven acres of land surrounding the house. Therefore, Parkinson contends that the assessors should have made separate assessments of the seven-acre parcel and of all the remaining land.

There is nothing in the record which supports the apparently arbitrary determination that seven acres of land were required for the use of Parkinson's house, and thus ought to be excepted from the restrictions set forth in the easement. One-half acre would probably be sufficient for some, while others would doubtless prefer substantially more. In short, the size of the servient estate depends wholly on one's estimate of the amount of property required for the use of the house. Moreover, as the board recognized, the easement would allow the use of one single family residence *anywhere* on the property. Accordingly, the instrument creates a roving exception to the easement's development restrictions, which, if the current residence were destroyed, could be placed anywhere on Parkinson's land. Therefore, the easement fails because it inadequately describes not only the size, but also the location, of the land subject to its restrictions. See 4 H. Tiffany, Real Property § 997, at 229 (3d ed. 1975).

Parkinson contends that the legislative scheme anticipates that the grantors of conservation easements may remain in residence on the subject property. See Forty-second Report of the Judicial Council, Pub. Doc. No. 144, at 89 (Dec. 1966). We conclude that in order to do this, grantors are required to identify a parcel of land, separate from the house, which is subject to the development restrictions. This conclusion is

bolstered by the language of G. L. c. 59, § 11, which provides that real estate subject to a conservation easement "shall be assessed as a separate parcel." The location of this "separate parcel," we conclude, must be identified with sufficient clarity to enable the assessment to be made. See G. L. c. 184, § 33 (1984 ed.) (public restriction tract index "shall indicate sufficiently for identification . . . the land subject to the restriction").

The decision of the Appellate Tax Board is affirmed.

*So ordered.*