#25595-a-SLZ

**2010 S.D. 88**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DRD ENTERPRISES, LLC,                                Plaintiff and Appellant,

v.

TODD THOMAS FLICKEMA, DAWN AMY
FLICKEMA, and PSC PROPERTIES, LLC,           Defendants and Appellees,

AVENTURE ESTATES, LLC, FIVE
J INVESTMENT CO., LLC, and
PINNACLE HOLDINGS, LLC,                            Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WARREN G. JOHNSON
Judge

\* \* \* \*

DYLAN A. WILDE of
Brady & Pluimer, PC
Spearfish, South Dakota                              Attorneys for plaintiff
                                                     and appellant.


DWIGHT A. GUBBRUD of
Bennett, Main & Gubbrud, PC
Belle Fourche, South Dakota                          Attorneys for defendants
                                                     and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 4, 2010

OPINION FILED **11/17/10**

#25595

ZINTER, Justice

[¶1.]     Appellant DRD Enterprises, LLC commenced a declaratory action against Todd and Dawn Flickema (Flickemas) and PSC Properties, LLC to obtain an access easement across their properties.  DRD based its claim upon a "Blanket Easement" granted by Dakota Resorts Management Group (Dakota Resorts), a prior owner of Flickemas' and PSC's properties.  The circuit court concluded that the Blanket Easement sufficiently described the servient tenement. Nevertheless, the court entered judgment for Flickemas and PSC because the court concluded that they were good faith purchasers without notice of the easement.  We only address the predicate question regarding the sufficiency of the easement description. Because we conclude that the Blanket Easement failed to sufficiently describe the servient tenement, we affirm the judgment.

*Facts and Procedural History*

[¶2.]     In 1999, the Gali Family Trust sold legally described real property to Dakota Resorts on a contract for deed.  For ease of reference we refer to the property as the "Non-Emery Properties."  On February 16, 2000, while in possession of the Non-Emery Properties, Dakota Resorts executed a document referred to as the Blanket Easement.  By the terms of the document, Dakota Resorts granted "the rights of a to be determined, as requested, legal right of ingress and egress" for the benefit of legally described properties.  For ease of reference we refer to the dominant tenement as "Emery No. 4" and "Emery No. 5."  The Blanket Easement did not, however, provide a legal description of the servient tenement.  It only indicated that the easement "shall provide a reasonable route through the *grantor's*

-1-

*land* that will not cause undo [sic] and unreasonable work and engineering." (Emphasis added.)[1] The Blanket Easement was filed with the Lawrence County Register of Deeds on February 22, 2000, and was recorded as Doc. No. 2000-704. The Lawrence County Register of Deeds indexed the Blanket Easement against Emery Nos. 4 and 5. But without a legal description, the Blanket Easement was not indexed against any servient tenement.[2]

[¶3.]     On March 30, 2000, a Gali-Dakota Resorts Short Form Contract for Deed was recorded as Doc. No. 2000-1202. The short form evidenced the 1999 sale of Non-Emery Properties to Dakota Resorts. It indicated that 378.3 acres, legally described as "Mineral Survey 1356 . . . of Sections 11, 12, 13, and 14 . . . ," had been conveyed. Thus, the Lawrence County Register of Deeds' records indicated that Dakota Resorts had been the equitable owner of Non-Emery Properties at the time it granted the Blanket Easement.

[¶4.]     Dakota Resorts sold the dominant tenement (Emery Nos. 4 and 5) to Kenneth and Amy O'Neill around the time it executed the Blanket Easement. The O'Neills sold Emery No. 5 to Aventure Estates, LLC in October 2004, and they sold Emery No. 4 to DRD in November 2005. The warranty deeds given to Aventure and DRD referenced the Blanket Easement recorded in Document No. 2000-704.

---

1.     The Blanket Easement indicates that it was not prepared by counsel in this case. It was prepared by Kenneth O'Neill, the purchaser of the dominant tenement.

2.     Instruments are indexed in numerical and grantor-grantee indexes. *See* SDCL §§ 7-9-8, 7-9-9.

[¶5.] Dakota Resorts also sold a portion of the Non-Emery Properties, the purported servient tenement, to Aventure in October 2004. The warranty deed conveying title to Aventure made no reference to the Blanket Easement. Aventure subsequently subdivided and replatted its portion of the Non-Emery Properties into lots. Aventure then sold Lot 5 to Flickemas on September 30, 2006. Aventure sold Lot 6 to PSC Properties on October 17, 2006.

[¶6.] Before closing on Lot 5, Lawrence Title Company issued Flickemas an initial commitment for title insurance. The Blanket Easement was attached to the commitment and was noted as a special exception. After reviewing the title commitment, Flickemas asked their real estate agent, Kathy Whitelock, about the Blanket Easement. Whitelock made an inquiry of the seller's real estate agent, who contacted the title company. Lawrence Title Company subsequently amended the commitment for title insurance, removing the Blanket Easement as a special exception. Neither Flickemas' final title insurance policy nor their warranty deed contained any reference to the Blanket Easement. Additionally, Todd Flickema personally inspected Lot 5. He observed no access road, trail or path across Lot 5 suggesting the existence of an ingress/egress easement.

[¶7.] Prior to closing on Lot 6, PSC obtained a title insurance commitment. PSC's commitment made no reference to the Blanket Easement. PSC's principal member, Dr. Paul Cink, inspected the land and did not observe any evidence suggesting the presence of an ingress/egress easement on Lot 6. Neither PSC's final title insurance policy nor its warranty deed mentioned the Blanket Easement.

[¶8.]     In 2006, DRD brought this declaratory action against several landowners, including Flickemas and PSC, to utilize the Blanket Easement to obtain an access easement from Terry Peak Summit Road to DRD's nearby land (Emery No. 4). Flickemas and PSC claimed the Blanket Easement was of "no effect" because the easement's mere reference to "grantor's land" did not sufficiently describe the servient tenement. The circuit court granted DRD summary judgment on this issue. The court ruled that the servient tenement, described only as "grantor's land," could be determined by resort to public records. According to the court, "grantor's land" included those Non-Emery properties Dakota Resorts had owned lying between Emery Nos. 4 and 5 and the Terry Peak Summit Road (which included Flickemas' Lot 5 and PSC's Lot 6). Therefore, the court held that the Blanket Easement sufficiently described the servient tenement to be effective. The court ruled, however, that there were factual issues precluding summary judgment on whether the Blanket Easement burdened Flickemas' and PSC's properties because they may have been good faith purchasers without notice of the Blanket Easement.[3]

[¶9.]     Following further discovery, the parties filed additional motions for summary judgment. The circuit court then concluded that the easement was not in Flickemas' or PSC's chain of title and that Flickemas and PSC were not burdened by the Blanket Easement because they were good faith purchasers without notice of

---

3.     The circuit court reasoned: "The location of the servient tenement on 'grantor's lands' [sic] obviously cannot be determined by a physical inspection of the property. Nor does the Blanket Easement appear in the chain of title to Defendants' property."

the easement.[4]  DRD appeals claiming that it was entitled to summary judgment

declaring that the Blanket Easement burdened Flickemas' and PSC's properties.

*Decision*

[¶10.]        This Court's standard of review on summary judgment is well-settled:

> Our standard of review on summary judgment requires this
> Court to determine whether the moving party has
> demonstrated the absence of any genuine issue of material fact
> and entitlement to judgment on the merits as a matter of law.
> The circuit court's conclusions of law are reviewed de novo.
> However, all facts and favorable inferences from those facts
> must be viewed in a light most favorable to the nonmoving
> party.  We will affirm the circuit court's ruling on a motion for
> summary judgment when any basis exists to support its ruling.

*United Bldg. Centers v. Ochs*, 2010 S.D. 30, ¶ 10, 781 N.W.2d 79, 82.

---

4.      *Bernardy v. Colonial & U. S. Mortgage Co.*, 17 S.D. 637, 648-49, 98 N.W. 166, 169 (1904), and *Fullerton Lumber Co. v. Tinker,* 22 S.D. 427, 430-32, 118 N.W. 700, 702-03 (1908), suggest that the Blanket Easement was within Flickemas' and PSC's chain of title and they were on notice of the existence of the Blanket Easement.  In *Bernardy*, this Court stated that conveyances in a person's chain of title are conveyances made by parties under whom the person claims title.  17 S.D. at 649, 98 N.W. at 169.  "[A] purchaser of property is necessarily charged with notice of all [recorded] conveyances or mortgages made by the party under whom he claims." *Id*. at 648, 98 N.W. at 169.  The recorded Blanket Easement was conveyed by Dakota Resorts, a party under whom Flickemas and PSC claimed title.

     In *Fullerton Lumber*, this Court held that a purchaser has constructive notice of all instruments recorded in either the "indexes of grantors and grantees, mortgagors and mortgagees, in [the purchaser's] chain of title" or the numerical index describing the purchaser's property.  22 S.D. at 430-32, 118 N.W. at 702-03.  *See also Lunstra v. Century 21 GKR-Lammers Realtors*, 442 N.W.2d 448, 450 (S.D. 1989).  The record indicates that the Blanket Easement was recorded in the Lawrence County Register of Deed's grantor-grantee index.  Therefore, *Fullerton Lumber* and *Bernardy* suggest that the Blanket Easement was in Flickemas' and PSC's chain of title, and they were charged with notice of its existence.  *See* SDCL §§ 43-25-3, 43-25-12, 43-28-15, 43-28-17 (statutes on recording, good faith purchasers, and constructive notice).

[¶11.]      DRD argues that Flickemas had "express information of the Blanket Easement" through the title insurance commitment, which included a copy of the easement and listed it as a special exception.  DRD argues that PSC had actual knowledge because Dr. Cink received a copy of the Blanket Easement in connection with the purchase of Lot 9 (another Non-Emery property in the Aventure subdivision).  Alternatively, DRD contends that Flickemas and PSC had constructive knowledge through the easement itself (Flickemas' title commitment) and through PSC's agency relationship with its realtor who knew of the easement.  DRD claims that with constructive knowledge, Flickemas and PSC were burdened with a duty of inquiry, and a diligent inquiry would have disclosed "the existence" of the easement.

[¶12.]      Flickemas and PSC argue that they were good faith purchasers of Lots 5 and 6 without notice of the Blanket Easement.  They contend that because the Blanket Easement did not appear on their final title insurance commitments or on any deeds within their chain of title, they did not have notice that the Blanket Easement burdened their properties.  They also argue that any constructive knowledge they had of the *existence* of the Blanket Easement was irrelevant because they made a reasonable inquiry and were presented with information from the title company leading them to believe the easement did not burden their properties.[5]

---

5.    Flickemas and PSC rely on the rule stated in *Betts v. Letcher*, 1 S.D. 182, 193-94, 46 N.W. 193, 196-97 (1890) (indicating that "[n]otice of a prior unrecorded conveyance, or of any title, legal or equitable, to the premises, or knowledge and notice of any facts which would put a prudent person upon
(continued . . .)

[¶13.]     To resolve this appeal, it is necessary to highlight DRD's specific argument.  DRD contends Flickemas and PSC knew the Blanket Easement expressly provided "that there was an easement for the benefit of Emery number 4 and Emery number 5."  But it may be assumed without deciding that Flickemas and PSC had knowledge of the existence of the Blanket Easement benefiting Emery Nos. 4 and 5.  The pertinent question is:  What knowledge did that easement convey regarding the purported servient tenement, Lots 5 and 6?  Because the Blanket Easement legally described Emery Nos. 4 and 5 as the dominant tenement while only describing the servient tenement as "grantor's land," the public record only disclosed that an easement on some undisclosed land, which Dakota Resorts once owned, benefited Emery Nos. 4 and 5.  Obviously, knowing that some undescribed Blanket Easement benefited Emery Nos. 4 and 5 does not support DRD's contention that Flickemas and PSC had knowledge that the easement burdened Lots 5 and 6.  To impute such knowledge, the Blanket Easement must have contained some property description or reference suggesting Flickemas' and PSC's properties were burdened by the easement.

[¶14.]     With respect to what knowledge the Blanket Easement conveyed, DRD argues that the Blanket Easement's reference to the servient tenement as "grantor's

_____

(. . . continued)

inquiry, impeaches the good faith of the subsequent purchaser"; however, "presumptive notice from possession, like that arising from any other fact putting one upon inquiry, is subject to rebuttal by proof showing that an inquiry, duly and reasonably made, failed to disclose any legal or equitable title in the occupant").  *See also Williamson v. Brown*, 15 N.Y. 354 (1857) (stating that party who makes a reasonable inquiry but fails to discover an unrecorded conveyance will be protected).  This rule, however, only applies to unrecorded instruments.

land" put Flickemas and PSC on constructive notice demanding "a prudent investigation into the extent of grantor's land such that they could provide an easement for ingress and egress to Emery number 4 and Emery number 5." DRD contends that an investigation of the public records would have disclosed that the Blanket Easement burdened Lots 5 and 6 because Dakota Resorts, the easement's grantor, at one time owned the Non-Emery Properties, and before the Aventure subdevelopment, Lots 5 and 6 were a part of the Non-Emery Properties. DRD also relies on the circuit court's initial ruling that the Blanket Easement sufficiently described the servient tenement.

[¶15.] DRD points out that the circuit court's initial order regarding the sufficiency of the servient tenement's description has not been appealed by notice of review and is therefore not subject to challenge by Flickemas or PSC. Although an appellee may not generally raise issues on which it filed no notice of review, *Appellant DRD's argument* in this appeal incorporates the reasoning of that earlier order. And, "[o]n appeal from a judgment the Supreme Court may review any order, ruling, or determination of the trial court . . . involving the merits and necessarily affecting the judgment and appearing upon the record." SDCL 15-26A-7. *See also Lang v. Burns*, 77 S.D. 626, 631, 97 N.W.2d 863, 866 (1959) ("On an appeal from a judgment this [C]ourt may review intermediate orders [that] involve the merits and necessarily affect the judgment appealed from.")

[¶16.] Additionally, under Federal Rule of Appellate Procedure 3(c)(1)(B), the counterpart of SDCL 15-26A-4(1),[6] "an appeal from a final judgment preserves all prior orders intertwined with the final judgment." *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998) (quoting *Trust Co. v. N.N.P. Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997)). "Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment." *Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 846 (8th Cir. 2001) (allowing appeal of final summary judgment order to include appeal of earlier summary judgment order). *See also Badger Pharmacal, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 626 (7th Cir. 1993) ("Ordinarily, an appeal from a final judgment brings up for review all previous orders entered in the case."); *United States v. One 1977 Mercedes-Benz*, 708 F.2d 444, 451 (9th Cir. 1983) (stating appeal from final judgment puts at issue all prior nonfinal orders and all rulings which produced the final judgment). *See generally* 20 James Wm. Moore et al., *Moore's Federal Practice* § 303.21[3][c][iii] (3d ed. 2010) ("An appeal from the final judgment usually draws into question all prior nonfinal orders and all rulings which produced the judgment.").

[¶17.] In this case, the circuit court's initial ruling and order led to and was the predicate for the summary judgment now challenged by DRD. Without the circuit court's initial order ruling the description of the servient tenement sufficient,

---

6. Both rules require that a notice of appeal shall "designate the judgment, order, or part thereof" being appealed. SDCL 15-26A-4(1); Fed. R. App. P. 3(c)(1)(B).

the court would not have rendered the summary judgment DRD now appeals. Moreover, DRD's current arguments regarding actual and constructive notice incorporate the reasoning of the circuit court's initial order; i.e., that the legal description in the Blanket Easement was sufficient to be effective against subsequent purchasers. Indeed, DRD expressly relies on the circuit court's initial order. Because the initial order affects and involves the merits of the summary judgment challenged by DRD, we review that initial order to determine whether the Blanket Easement sufficiently described the servient tenement.

[¶18.]    Many jurisdictions have considered the sufficiency of an easement description necessary to burden a subsequent purchaser of property. Like South Dakota, the Supreme Court of Washington requires a conveyance creating an easement to comply with the statute of frauds. *Berg v. Ting*, 125 Wash.2d 544, 551, 886 P.2d 564, 568-69 (1995).[7] To comply with the statute of frauds, a conveyance creating an easement must contain either 1) a description of the land sufficient to locate the servient tenement or 2) a reference to another document which contains a description sufficient to locate the servient tenement. *Id*. Although "'a deed [of easement] is not required to establish the actual location of an easement, [it] is required to convey an easement' which encumbrances a *specific* servient estate. The servient estate must be sufficiently described." *Id*. (emphasis added) (internal citation omitted) (quoting *Smith v. King*, 620 P.2d 542, 543 (Wash. App. 1980)).

---

7.    "An easement is an interest in land subject to the statute of frauds." *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 25, 736 N.W.2d 824, 833.

[¶19.]     The Supreme Court of New Mexico stated that "the description of real estate in a deed inter partes is sufficient if it identifies the property intended to be conveyed by it, or furnishes means or data which point to evidence that will identify it." *Heron v. Ramsey*, 45 N.M. 483, 117 P.2d 242, 246 (1941).  The court summarized the rules in various decisions, which included a decision by this Court, concerning the sufficiency of real estate descriptions.  A description is sufficient only if:

> "[T]he description furnish[es] the key to the identification of the land intended to be conveyed," *Smith v. Fed[.] Land Bank*, 181 Ga. 1, 181 S.E. 149, 150 [(1935)]; or if the description is "either certain in itself, or capable of being reduced to certainty by a reference to something extrinsic to which the deed refers," *Buckhorn Land & T. Co. v. Yarbrough*, 179 N.C. 335, 102 S.E. 630, 631 [(1920)]; or "if there appears therein enough [in the description] to enable one, by pursuing an inquiry based upon the information contained in the deed, to identify the particular property to the exclusion of [all] others," *Coppard v. Glasscock*, [ ] 46 S.W.2d 298, 300 [(Tex. Com. App. 1932)]; or if the deed itself furnishes "the means of identification," *Ault v. Clark*, 62 Ind. App. 55, 112 N.E. 843, 845 [(1916)]; or if the description "can be made certain [by] inquiries suggested by the description given in such deed," *Ford v. Ford*, 24 S.D. 644, 124 N.W. 1108 [(1910)]; or the description in a deed must be sufficiently certain to identify the land therefrom or furnish the means with which to identify it, *Hamilton v. Rudeen*, 112 Or. 268, 224 P. 92 [(1924)].

*Id.*  The same sufficiency-of-description rules that apply to descriptions in deeds, apply to descriptions of easements.  *See Cummings v. Dosam, Inc.*, 273 N.C. 28, 33, 159 S.E.2d 513, 518 (1968).

[¶20.]     The Massachusetts Supreme Court acknowledged the sufficiency-of-description requirement when it struck down a conservation easement on grounds of an insufficiently described servient tenement.  *Parkinson v. Bd. of Assessors of Medfield*, 395 Mass. 643, 645, 481 N.E.2d 491, 493 (1985).  That easement

prohibited construction on eighty-two acres of land yet allowed the use of "[o]ne single-family residence with usual appurtenant outbuildings and structures." *Id*. at 643-44, 481 N.E.2d at 492. The court found that the servient tenement was the eighty-two acres minus an ambiguous amount of property required for the use of the residence. *Id*. at 646, 481 N.E.2d at 493. Because nothing in the instrument creating the easement identified the amount of property required for the residence, the servient tenement was insufficiently described and invalid. *Id*. The Massachusetts Supreme Court explained:

> "While no particular words are necessary for the grant of an easement, the instrument must identify with reasonable certainty the easement created and the dominant and servient tenements." *Dunlap Investors, Ltd. v. Hogan,* 133 Ariz. 130, 132, 650 P.2d 432 (1982) [(]quoting *Oliver v. Ernul,* 277 N.C. 591, 597, 178 S.E.2d 393 (1971)[)]. *Hynes v. Lakeland,* 451 So.2d 505, 511 ([Fla. Dist. Ct. App.] 1984). *Germany v. Murdock,* 99 N.M. 679, 681, 662 P.2d 1346 (1983). *Vrabel v. Donahoe Creek Watershed Auth.,* 545 S.W.2d 53, 54 ([Tex. Civ. App.] 1976). *See McHale v. Treworgy,* 325 Mass. 381, 385, 90 N.E.2d 908 (1950). The instrument must be sufficiently precise that "a surveyor can go upon the land and locate the easement." *Vrabel*[, 545 S.W.2d at 54]. If the instrument does not describe the servient land with the precision required to render it "capable of identification . . . the conveyance is absolute[ly] nugatory." *McHale*[, 325 Mass. at 385, 90 N.E.2d 908 at 911]. *Allen v. Duvall,* 311 N.C. 245, 249, 316 S.E.2d 267 (1984).

*Id*. at 645-46, 481 N.E.2d at 493.

[¶21.]     The North Carolina Supreme Court has discussed the sufficiency of an easement's description in many cases. In *Allen v. Duvall* it explained:

> When an easement is created by deed, either by express grant or by reservation, the description thereof "must either be certain in itself or capable of being reduced to a certainty by a recurrence to something extrinsic to which it refers. . . . *There must be language in the deed sufficient to serve as a pointer or a guide to the ascertainment of the location of the land."*

311 N.C. 245, 249, 316 S.E.2d 267, 270 (1984) (quoting *Thompson v. Umberger,* 221 N.C. 178, 180, 19 S.E.2d 484, 485 (1942)). When an easement's description is patently ambiguous, the language is insufficient to identify the land with certainty, and so the purported easement will be void. *Id.* "When . . . the ambiguity in the description is not patent but latent—referring to something extrinsic by which identification might be made—the reservation will not be held void for uncertainty." *Id.* at 251, 316 S.E.2d at 271.

[¶22.]     The North Carolina Supreme Court later struck down a portion of an easement remarkably analogous to the one we consider today. *Cummings,* 273 N.C. at 34, 159 S.E.2d at 518. The North Carolina easement purported to burden land identified as "this tract and adjoining tracts being acquired by Grantee." *Id.* The court upheld the validity of the easement on "this tract" because it was legally described in the deed. *Id.* But the court invalidated the purported easement on "adjoining tracts being acquired by Grantee" because the adjoining tracts were not otherwise described. *Id.* The court pointed out that the language "adjoining tracts being acquired by Grantee," was patently ambiguous. *Id.* "'The description must identify the land, or it must refer to something that will identify it with certainty.' The same principle applies to the description of the servient estate in a deed granting an easement." *Id.* at 33, 159 S.E.2d at 518 (quoting *Deans v. Deans,* 241 N.C. 1, 7, 84 S.E.2d 321, 325 (1954)).

[¶23.]     Also like the case at bar, a Texas appellate court considered an easement described as "111.0 acres, more or less, out of a 250.5 acre tract of land in the Basil Durbin Survey." *Vrabel v. Donahoe Creek Watershed Auth.,* 545 S.W.2d

53, 54 (Tex. Civ. App. 1977). The instrument did not describe the location of the 111 acre servient tenement, nor did the instrument reference another writing describing the location of the 111 acre servient tenement. *Id.* The court concluded that the description rendered the easement void as to third parties. *Id.* The court explained that for an easement to be sufficiently described, "the description must be so definite and certain upon the face of the instrument itself, or, in some writing referred to, that the land can be identified with reasonable certainty." *Id.* (citing *Matney v. Odom*, 147 Tex. 26, 210 S.W.2d 980 (1948)). In *Matney*, the court stated: "Since the description, or the key thereto, must be found in the language of the contract, the whole purpose of the statute of frauds would be frustrated if parol proof were admissible to supply a description of land which the parties have omitted from their writing. So, while a defect in description may be aided by the description shown on a map, in such case the map must be referred to in the contract[.]" 147 Tex. at 31-32, 210 S.W.2d at 984 (quoting 1 Jones, Cyclopedia of Real Property Law 329).

[¶24.] The common denominator in these cases is that the conveying instrument must either describe the servient tenement with certainty or make reference to something else that makes the servient tenement identifiable with certainty. South Dakota follows this view. In *Ford v. Ford*, this Court stated:

> The office of a description in a deed is not to identify the lands, but to furnish the means of identification, and that a description is considered sufficiently certain which can be made certain, and that a description in a deed would be deemed sufficient if a person of ordinary prudence, acting in good faith and making inquiries suggested by the description given in such deed, would be enabled to identify the property.

24 S.D. 644, 648, 124 N.W. 1108, 1110 (1910) (holding description of property in a homestead conveyance sufficient to convey the property).[8]

[¶25.] In *Schlecht v. Hinrich*, this Court again required a real estate description to furnish means to identify the property. 50 S.D. 360, 363, 210 N.W. 192, 193 (1926). This Court stated, "A description of property in a chattel mortgage is sufficient where it will enable a third person, aided by inquiries which the instrument itself suggests, to *identify the property*." *Id.* (emphasis added) (holding that a misleading property description was sufficient to put third parties on notice of a mortgage).

[¶26.] In DRD's Blanket Easement, the only identifying words in the description are "grantor's land." These two words do not suggest any point of reference by which one could identify the specific property burdened. *See Ford*, 24 S.D. at 648, 124 N.W. at 1110; *Schlecht*, 50 S.D. at 363, 210 N.W. at 193. "Grantor's land" certainly does not itself, or by reference to an outside aid, identify the burdened land with certainty. *See Cummings,* 273 N.C. at 33, 159 S.E.2d at 518; *Vrabel*, 545 S.W.2d at 54. The broad description "grantor's land" is insufficient to create an easement under the analogous descriptions considered in *Cummings,* 273 N.C. 28, 159 S.E.2d 513, and *Vrabel*, 545 S.W.2d 53. Indeed, "grantor's land" could

---

8. DRD's Blanket Easement described the purported servient tenement only as "grantor's land." The easement did not give a description or even suggest a nonlegal, commonly understood point of reference like in *Ford*, where the conveyance described the land as being "situated on Belle Fourche [R]iver, Butte [C]ounty" and "commonly known as the headquarters of Ford Bros. Cattle Company on Belle Fourche [R]iver, Butte [C]ounty." *Id*. at 646, 124 N.W. at 1109.

have included any property that was owned by Dakota Resorts in the vicinity of Emery Nos. 4 and 5 on February 16, 2000. Contrary to the circuit court's opinion, there is certainly nothing in the language of the purported easement suggesting that the burdened land was located between Emery Nos. 4 and 5 and "Terry Peak Summit Road," the latter descriptor being parole evidence not mentioned in the Blanket Easement.[9]

[¶27.]    We conclude that the words "grantor's land" are not by themselves "sufficient to serve as a pointer or a guide to the ascertainment of the location of the land." *See Thompson,* 221 N.C. at 180, 19 S.E.2d at 485. This non-descriptive language, neither describes the land sufficiently enough to locate the servient tenement nor references another document which does so. *See Berg*, 125 Wash.2d at 551, 886 P.2d at 569. The description furnishes no means or data pointing to evidence that identifies the servient tenement. *See Heron*, 117 P.2d at 246. It clearly does not enable a person to identify what lots in Aventure's subdevelopment—to the exclusion of all other lots—are burdened as the servient tenement. *See Coppard v. Glasscock*, 46 S.W.2d 298, 300 (Tex. Com. App. 1932). The description was inadequate to give notice or be legally effective as to Flickemas and PSC.

---

9.    There is no Terry Peak Summit Road reference in the easement. Therefore, there is nothing in the easement limiting "grantor's land" to a location between Emery Nos. 4 and 5 and Terry Peak Summit Road. The sole reference to Emery Nos. 4 and 5 and "grantor's land" means that the servient tenement could have included any land Dakota Resorts may have owned that was contiguous to Emery Nos. 4 and 5 at *any* location.

[¶28.]     "Although we may not agree with the rationale of the circuit court, we will uphold summary judgment if there is a valid basis to do so." *Hoekman v. Nelson*, 2000 S.D. 99, ¶ 6, 614 N.W.2d 821, 823.  "[A] trial court may still be upheld if it reached the right result for the wrong reason." *Schmiedt v. Loewen*, 2010 S.D. 76, ¶ 20 n.3, 789 N.W.2d 312, 318 n.3 (quoting *Flugge v. Flugge*, 2004 S.D. 76, ¶ 35, 681 N.W.2d 837, 846).  Because the Blanket Easement was insufficient to create an easement burdening Flickemas' Lot 5 or PSC's Lot 6, the circuit court's judgment is affirmed.

[¶29.]     GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY and SEVERSON, Justices, concur.